IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2001

**STATE OF TENNESSEE v. KENNETH ENGLAND**

**Direct Appeal from the Criminal Court for Campbell County**
**No. 10,145     E. Shayne Sexton, Judge**

---

**No. E2001-01253-CCA-R3-CD**
**February 19, 2002**

---

The Defendant pled guilty to three counts of retaliation for past action, a Class E felony, and the trial court sentenced him to four years on community corrections. Three separate violation warrants were subsequently issued against the Defendant. Following a revocation hearing, the trial court revoked the Defendant's placement on community corrections and ordered that the Defendant serve his original sentence in the Tennessee Department of Correction. The Defendant now appeals, arguing that the trial court erred in revoking his community corrections sentence and ordering him to serve his sentence in confinement. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Julie A. Rice, Knoxville, Tennessee (on appeal); and Charles Herman, Jacksboro, Tennessee (at trial), for the Appellant, Kenneth England.

Paul G. Summers, Attorney General and Reporter; Patricia C. Kussmann, Assistant Attorney General; William Paul Phillips, District Attorney General; Michael Ripley, Assistant District Attorney General; and John Steakley, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Campbell County Grand Jury indicted the Defendant, Kenneth England, for five counts of retaliation for past action and for five counts of harassment. On November 29, 1999, the Defendant pled guilty to three counts of retaliation for past action, a Class E felony, for writing threatening letters to his wife while he was in prison. The trial court sentenced him to an effective sentence of four years to be served on community corrections.

On April 19, 2001, the Defendant was arrested by the LaFollette Police Department and charged with aggravated assault. The Campbell County Criminal Court then issued a community

corrections violation warrant on April 23, 2001, alleging that the Defendant failed to "obey all laws" by being charged with aggravated assault. Another warrant was issued by the court on May 2, 2001, alleging that the Defendant failed to remain under house confinement, that the Defendant was in possession of a deadly weapon, and that he failed to report his arrest to his community corrections officer. On May 10, 2001, the court issued a final community corrections violation warrant, alleging that the Defendant failed to obey the law, as evidenced by his indictments for aggravated assault and retaliation.

A revocation hearing was held on May 10, 2001. The Defendant's community corrections officer, Robert Walden, testified that he met with the Defendant for the first time on March 26, 2001 and again on April 4, 2001. According to Walden, at the second meeting, the Defendant expressed his agitation about being on community corrections. Walden testified that the Defendant told him that "for fifteen years [the Defendant] beat [his wife's] brains out and nobody ever did anything." Walden recalled that the Defendant also stated, "Well, I'll tell you what, what keeps me going is what kept me going for five and a half years in prison . . . And that's the thought of killing my ex-wife and getting away with it, and I'm going to do it. Some day I will. Maybe not right away, maybe in ten years, something to that effect, but I'm going to do it." Walden testified that he took notes of the meetings. Walden also testified that he reported the Defendant's statements to his supervisor, and they arranged to meet with the District Attorney's Office.

Walden stated that the charge for aggravated assault was dismissed after a preliminary hearing on May 1, 2001; however, the Defendant was subsequently indicted by the Grand Jury for aggravated assault and retaliation. Walden testified that the charges of failing to remain under house confinement and possession of a dangerous weapon were based on the location of the alleged aggravated assault.

The Defendant testified that he had not had any contact with his former wife since he had been out of prison and that he would not hurt her because she was not worth it. Regarding his conversation on April 4, 2001 with Walden, the Defendant stated that he did tell Walden that he beat his wife for fifteen years, but said that he did not recall making a comment about hurting his former wife in the future. However, he testified that he "was on medication at that time" and was "pretty bitter about being in prison [for] fifteen months." The Defendant further stated, "Well, if I did, I don't remember doing it, but it didn't mean anything because I had no intention of ever hurting my wife, ex-wife." He also testified, "Even if I did, . . . what can you do about it?"

The Defendant acknowledged that he was arrested for aggravated assault in LaFollette, but he maintained that he did not know he had to inform his corrections officer of his arrest because he "didn't read the rules." The Defendant testified that even if he had known that he had to call the corrections officer, he could not have done so because prisoners can only make collect calls. The Defendant testified that when he was charged with aggravated assault, he "told the judge" he was on community corrections.

On cross-examination, the Defendant testified that he "[did not] know for sure" if he was supposed to be on house arrest because it was never explained to him. The Defendant testified that

he had been on community corrections twice. The Defendant recalled that on the day of his arrest for aggravated assault, he "had to go to the store and get [] some cigarettes, and [he saw] a man about some work [he] was trying to do, a mechanic, work and make some money."

Walden's supervisor, Karen Pierce, testified that she had supervised the Defendant once, but it had "been quite some time" since she had done so. Pierce testified that people on community corrections are subject to house arrest and that "as best as [she could] recall," Pierce explained that to the Defendant when she supervised him. Pierce testified that the rules are printed on the contract, and she explains each rule to all of her charges.

## ANALYSIS

The Defendant argues that the trial court erred in revoking his community corrections sentence. Our supreme court has noted that the principles governing a probation revocation are largely applicable in a community corrections revocation. State v. Harkins, 811 S.W.2d 79, 82-83 (Tenn. 1991). In order to revoke a community corrections sentence, the trial court must find by a preponderance of the evidence that the defendant has violated the terms of the agreement. Id. at 82. On appeal, a revocation will be upheld absent an abuse of discretion. In order for a reviewing court to find an abuse of discretion, it must be shown that the record contains "no substantial evidence to support the conclusion of the trial judge that a violation of the conditions . . . occurred." Id. The trial court may, within its discretionary authority, require the Defendant to serve his sentence in confinement upon revoking the community corrections sentence. Tenn. Code Ann. § 40-36-106(e)(4).

It is clear from the record in this case that the Defendant violated the terms of his community corrections sentence. The warrants against the Defendant stated that he failed to obey all laws, that he failed to remain under house confinement, that he was in possession of a deadly weapon, and that he failed to report his arrest to his community corrections officer. The Defendant does not contest the fact that he was arrested for aggravated assault. It is also evident from the record that the Defendant failed to report to his community corrections officer when he was arrested for aggravated assault. The Defendant argues that did not know he had to inform his corrections officer of his arrest because he "didn't read the rules." The Defendant also argues that he would have been unable to contact the officer because the jail only allows prisoners to make collect calls. It is the Defendant's responsibility to follow the terms of a release on community corrections. It is no excuse that the Defendant failed to read the terms of the contract. The Defendant failed to show that he made any effort to contact the community corrections office following his arrest.

The evidence in the record also supports the charge that the Defendant failed to obey the law by committing the offense of retaliation for past action. This crime is defined, in pertinent part, as "harm[ing] or threaten[ing] to harm a witness at an official proceeding . . . by any unlawful act in retaliation for anything the witness . . . did in an official capacity as witness . . . ." Id. § 39-16-510(a). The Defendant's community corrections officer testified that during one of their meetings, the Defendant stated that "what keeps [him] going is . . . the thought of killing [his] ex-wife and getting away with it." The Defendant told the officer that he was "going to do it."

-3-

Thus, there was sufficient evidence in the record to support the trial court's decision to revoke the Defendant's community corrections sentence. The Defendant violated the terms of his community corrections release by failing to contact his community corrections officer after being arrested for aggravated assault and also by committing a retaliation for past action by making threats against his former wife to his community corrections officer.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE