IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 9, 2005

## STATE OF TENNESSEE v. DERRICK LE'MON GOODE

**Direct Appeal from the Circuit Court for Bedford County**
**No. 15014     Lee Russell, Judge**

_____

**No. M2004-01368-CCA-R3-CD - Filed May 3, 2005**

_____

On appeal, the defendant challenges the revocation of his probation; specifically, he contends that the trial court erred in revoking his probation based on the new charge of possession of prohibited weapons (sawed-off shotguns) when the weapons were not entered into evidence and their length was only estimated but never measured. Upon our review, we conclude that the deputy's estimation of the length of the weapons is sufficient to support revocation. Moreover, it is uncontroverted that the defendant had an outstanding payments owed to the court, which constitutes an additional ground for revocation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. JOSEPH M. TIPTON, J., concurs in results only.

Donna L. Hargrove, District Public Defender, and Andrew Jackson Dearing, III, Assistant Public Defender, for the appellant, Derrick Le'Mon Goode.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael D. Randles and Ann L. Filer, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

Following a jury trial, the defendant Derrick Le'mon Goode, was convicted of forgery and theft under $500. He received consecutive sentences of two years on the forgery charge and eleven months and twenty-nine days on the charge of theft under $500. On October 29, 2002, the defendant was granted determinate release on the forgery charge but was required to remain and serve 75% of his eleven month and twenty-nine day sentence before being released to probation in July 2003. On April 16, 2004, a probation violation warrant was issued, alleging:

1)    New law violations (possession of a prohibited weapon and felon in possession of a firearm);

2)    A violation of rule three of his rules of probation (possession of a firearm, ammunition, or illegal weapon in violation of his probation); and

3)    Failure to pay court costs and fines, amounting to $230 a month, since February 2004.

Following a hearing on the probation violation, the court issued an order revoking the defendant's probation and ordering him to serve the balance of his sentence. The defendant's sole contention on appeal is that the trial court erred in basing his revocation, in part, on possession of a prohibited weapon when the subject weapons were not placed in evidence at the hearing and when their lengths were estimated but never measured.

At the revocation hearing, Deputy George Marsh ("Deputy Marsh") testified that he was employed with the Bedford County Sheriff's Department and that he patrolled Fire Field Pike on the night of the defendant's arrest. While on patrol, Deputy Marsh observed an unoccupied vehicle parked in a sharp curve near two residences. Aware that the area had been the subject of recent burglaries, Deputy Marsh approached the vehicle and ran the license tag number. From that, he learned that the tag was registered to the defendant, but that it did not match the vehicle. Upon further investigation, Deputy Marsh discovered two sawed-off shotguns in the back seat of the vehicle, partially covered with a black trash bag and a blanket. He then called for backup and remained with the vehicle. At the hearing, Deputy Marsh estimated that both weapons were eighteen inches in length.

While waiting for other officers to arrive, a second vehicle, in which the defendant was a passenger, pulled up. The defendant inquired as to why Deputy Marsh was near his vehicle, to which Deputy Marsh responded, "What are you doing with sawed-off shotguns in the back seat of your vehicle?" The defendant then began yelling, cursing, and alleging that he was being "set up to be sent to Federal prison." He further denied that there were shotguns in the vehicle. Based upon what he had seen, Deputy Marsh arrested the defendant and charged him with possession of prohibited weapons. Later in the evening, the defendant's previous convictions were discovered, and he was also charged with being a felon in possession of weapons.

On cross-examination, Deputy Marsh acknowledged that the shotguns were not measured at any time and that he "guessed" about the exact length of the weapon. He stated that he neither had access to the weapons nor the time to measure them before coming to court. Deputy Marsh said that there was no statement in the report showing that the defendant admitted having no passengers in the vehicle; however, he testified that a witness did state that the defendant had no passengers. Finally, he acknowledged that the shotguns could have been longer than eighteen inches. On redirect examination, Deputy Marsh testified that he had previously fired shotguns both in the professional and recreational context. He further stated that he would not have shot the weapons because their length rendered them unsafe.

Michelle Phillips ("Phillips") then testified that she was employed as a probation officer and that she was charged with supervising the defendant. She stated that the defendant's unpaid fines totaled $1902. She testified that the defendant was scheduled to complete probation on February 9, but requested an extension of probation on January 16, in order to pay the balance owed to the court. At that time, the trial court granted a six month extension, and the defendant agreed to pay $230 a month beginning February 1. Phillips testified that the defendant paid $200 in February but did not pay or report thereafter.

On cross-examination, Phillips stated that the defendant missed his scheduled appointment in February but came in later that month to report and pay. The defendant's next appointment was scheduled for March 24, but he phoned that day to say that he could not make the appointment. On March 29, the defendant again phoned Phillips to inform her of his arrest. At that time, the defendant's appointment was re-scheduled for the following day. However, the defendant again missed his appointment on March 30. Phillips stated that the defendant "should not have been in jail" on the day of his appointment, as his release sheet indicated that he made bond on either March 26 or 27. Phillips also testified that she had previously sent three "warning letters" for missed appointments and that the defendant reported after receiving those letters.

Karen Goode, the defendant's wife, testified as the final witness. She stated that she was aware of the fees owed by the defendant and that she had been helping him make payments. She further testified that she was prepared to pay $230 that day towards the defendant's unpaid fees and costs.

<u>Analysis</u>

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. Tenn. Code Ann. §§ 40-35-310, -311 (2003). The decision to revoke probation rests within the sound discretion of the trial court. <u>State v. Mitchell</u>, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation and a community corrections sentence is subject to an abuse of discretion standard of review, rather than a *de novo* standard. <u>State v. Harkins</u>, 811 S.W.2d 79, 82 (Tenn. 1991). Discretion is abused only if the record contains no substantial evidence to support the conclusion of the trial court that a violation of probation or community correction sentence has occurred. <u>Id.</u>; <u>State v. Gregory</u>, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). Proof of a violation need not be established beyond a reasonable doubt, and the evidence need only show that the trial judge exercised a conscientious and intelligent judgment, rather than acting arbitrarily. <u>Gregory</u>, 946 S.W.2d at 832; <u>State v. Leach</u>, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

On appeal, the defendant alleges that the trial court erred in basing his violation, in part, on the charge of possession of prohibited weapons, when the weapons were not placed in evidence and when their length was only estimated, but never measured. The pertinent statute is codified at Tennessee Code Annotated section 39-17-1302, and states:

Prohibited Weapons

(a     A person commits an offense who intentionally or knowingly possesses, manufactures, transports, repairs or sells:

. . .

(4)     A short-barrel rifle or shotgun

Further, a "short barrel" is defined as "a barrel length of less than sixteen inches (16") for a rifle and eighteen inches (18") for a shotgun, or an overall firearm length of less than twenty-six inches (26")[.]" Tenn. Code Ann. § 39-17-1301(12) (2003).

At the revocation hearing, Deputy Marsh estimated that both shotguns were eighteen inches in length. On cross-examination he testified, "Ma'am, I looked at the weapon. The weapon had been altered, and it was shorter than a weapon that was legal to be carried." On redirect examination, he stated that he had fired shotguns in both a professional and recreational context and indicated that the weapons were unsafe to fire because of their length. Although the weapons were never measured, the trial court accredited the testimony of Deputy Marsh and found:

> [T]hat [the defendant] was in possession of an illegal weapon. Ideally, I suppose we would have the weapon up here. It could have been accomplished, frankly, by either side. It wasn't. But the officer estimated it at 18 inches. That's a long way from the 26 [inches]. I think the officer's testimony was convincing on the relative length, the estimated length of this weapon. I think it was illegal.

Upon review, we conclude that the trial court was well within its discretion in accepting Deputy Marsh's estimation and in finding, by a preponderance of the evidence, that the defendant possessed illegal weapons. The State must only prove that a violation occurred by a preponderance of the evidence, and the trial court's revocation may only be overturned in the absence of any "substantial evidence" supporting revocation. Gregory, 946 S.W.2d at 832; Harkins, 811 S.W.2d at 82. In this case, the deputy's estimation constituted substantial evidence and is sufficient to support the trial court's conclusion.

We also conclude that revocation was proper because the trial court based its conclusion on an additional ground: the defendant's failure to pay court costs and fines. The defendant's probation officer testified that he paid $200 in February, $30 short of his required payment, and had not made a payment since. Moreover, defense counsel conceded that the defendant had not made all scheduled payments:

> And in the last two months, February, March – March and April, he has not [paid], so we do concede that he has not made those two payments. But, Judge, what we're asking for is not put him in prison, to put him to pay court costs and fines, but to put him back on probation, extend his probation to some reasonably [sic] extent to allow him to pay the $1,177 on this old sentence, and that would, I believe, would be a reasonable disposition of this matter.

Ultimately, the trial court found that:

> [The defendant] has agreed that he was – or it's been agreed on his behalf and it's

uncontroverted in this record that he did get behind on his payments, so he is out of compliance with the terms of his probation. His probation will be revoked and he'll be asked to serve the balance of his sentence.

We conclude that either violation, standing alone, would have been sufficient to revoke the defendant's probation; however, taken together they provide compelling reason for doing so.

## Conclusion

We affirm the trial court's revocation of probation.

_____
JOHN EVERETT WILLIAMS, JUDGE