IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 25, 2005

## STATE OF TENNESSEE v. DELORES CHRISTINA ARMSTRONG

**Direct Appeal from the Circuit Court for Blount County
No. C-15035    D. Kelly Thomas, Jr., Judge**

**No. E2004-02957-CCA-R3-CD - Filed December 9, 2005**

The appellant, Delores Christina Armstrong, was convicted of child abuse and neglect, and she received a sentence of four years. The trial court ordered the appellant to serve her sentence in community corrections. Subsequently, the appellant's community corrections sentence was revoked, and the appellant was ordered to serve the balance of her sentence in confinement. On appeal, the appellant challenges the revocation of her community corrections sentence and the imposition of a term of confinement. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed**.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Julie A. Rice, Knoxville, Tennessee (on appeal), and Mack Garner, Maryville, Tennessee (at trial), for the appellant, Delores Christina Armstrong.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Ellen Berez, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On August 11, 2004, the appellant pled guilty to one count of child abuse and neglect of a victim less than six years old, a Class D felony. The trial court imposed a sentence of four years, to be served in community corrections. The trial court ordered the appellant, as a condition of her sentence, to have a psychological evaluation, "follow all recommendations," and take her medication as prescribed. Further, the court instructed the appellant to attend "parent effectiveness training." Additionally, the appellant signed a behavioral contract listing the conditions of her alternative

sentence.

Subsequently, on October 4, 2004, Lisa Skiles, the appellant's community corrections supervisor, filed a community corrections revocation warrant against the appellant. The warrant alleged that the appellant had failed to report that she had been arrested on September 29, 2004, in Knox County for violation of probation. Additionally, the warrant alleged that the appellant had "packed up and rented her trailer to another defendant" and was planning to move to Canada without prior approval. Finally, the warrant provided that the appellant had failed to pay her monthly supervision fees or court costs.

On October 7, 2004, the revocation warrant was amended to include the following grounds for a revocation of the appellant's community corrections sentence:

> 1. Being arrested September 29, 2004, in Knox County for Violation of Probation of Rule 21 and 22; to wit: Inform officer of arrest in 24 hours and obey all laws of the land.
>
> 2. Being arrested on September 14, 2004 in Sevier County for Theft of Property/Lowe's; Violation of Rule 21 and 22; to wit: Inform officer of arrest in 24 hours and obey all laws of the land.
>
> 3. Being in violation of Rule #18: Make a full and truthful report to officer: [the appellant] failed to apprise this office of [three] prior arrests and convictions.

On November 4, 2004, another revocation warrant was filed, alleging that the appellant failed to report her arrest in Knox County on October 29, 2004, for a violation of probation. Additionally, the warrant provided that the appellant had failed to pay her supervision fees or court costs.

Thereafter, on December 13, 2004, a revocation hearing was conducted. Don Bowling, a loss prevention investigator for Home Depot stores, testified regarding the incident on September 28, 2004. Bowling testified that on September 28, 2004, he noticed the appellant, accompanied by a male and two children, walking through the aisles of the Home Depot store located on Kingston Pike in Knoxville. Bowling assumed that the man was the appellant's husband. One of the children was walking, and the other child was in a carrier seat in the shopping cart. The appellant placed a "brick rub" in the shopping cart, and her husband placed a "rebar bender" in the cart. They stopped and talked in front of a display of DeWalt 18-volt batteries, then they each placed one battery in the shopping cart. The appellant also placed a package of drill bits in the cart. As the couple approached the registers, the appellant's husband took one of the batteries out of the cart and walked toward the registers. The appellant continued to walk straight ahead, and Bowling followed her.

The appellant went to the gardening department, removed a pair of scissors from a shelf, cut the drill bit packaging, and removed the security sensor. She placed the scissors back on the shelf,

then hid the drill bits beneath the blanket covering the child in the shopping cart. The appellant wandered to the outside area of the gardening department. Her husband eventually came into the gardening department and handed the appellant a receipt and an empty, plastic Home Depot bag. After speaking momentarily, the appellant took the battery from her shopping cart and placed it in the bag with the receipt. The appellant's husband left, and the appellant walked around for a while before exiting the building through the garden department without paying for any of the merchandise.

Bowling followed the appellant outside the building, giving her an opportunity to return to the store to pay for the merchandise. However, Bowling apprehended her when she was seventy-five to eighty feet from the store, obviously attempting to exit the property. The appellant told Bowling that she had not stolen anything. Thereafter, a scuffle ensued, and the Knoxville Police Department was called. When the police attempted to handcuff the appellant, she became violent and told her daughter to "go get Daddy." The child soon returned with the appellant's husband who acted "like he did not have a clue of what was going on." After being apprised of the problem, the appellant's husband stated that the appellant was on medication. Bowling warned the appellant not to return to any Home Depot properties, and she was given a "no-trespass warning" in front of several witnesses. Bowling maintained that the appellant acknowledged that she did not have any money with her while she was in the store. The total value of the stolen merchandise was $154.92.

Jack Bissett testified that he is a loss prevention agent for the Lowe's store in Sevierville. Bissett explained that in his position as loss prevention agent he dresses in plain clothes and does not wear a "Lowe's vest" to designate that he is an employee. On September 14, 2004, at approximately 4:50 p.m., Bissett was performing a "detailed safety walk" when he noticed the appellant pushing a shopping cart containing at least two children. He believed that a third child was walking beside the shopping cart. The appellant selected building material tools and placed them in the shopping cart, underneath a blanket covering one of the children. Each time the appellant selected an item, she looked furtively back and forth to see if any Lowe's employees were in the area. The appellant's husband periodically came to speak with the appellant then walked away.

Bissett watched the appellant for approximately forty to forty-five minutes, observing as she walked through several aisles. During this time, she concealed two trailer hitches underneath the blanket. Eventually, he saw her exit through the garden department and walk toward the parking lot without paying for the merchandise. The appellant's husband was fifteen to twenty-five feet ahead of the appellant, walking toward the couple's vehicle. Bissett approached the appellant and advised her that she was being detained for shoplifting and would have to return to the store to discuss the merchandise for which she had not paid. The appellant began taking the merchandise from the shopping cart, throwing the items underneath the display of plants located in front of the store.

After Bissett told the appellant that she was being detained for shoplifting, the appellant's husband approached. Bissett testified that the appellant's husband was agitated, and he came close enough to Bissett to "violat[e] my space." The appellant's husband produced a piece of paper showing that the appellant had recently been released from incarceration and asked Bissett to "show

leniency." Bissett escorted the appellant back to the store. Bissett explained that he was never supposed to be alone with a suspect, particularly a suspect of the opposite gender. Therefore, he had two witnesses come into the room. Bissett stated that the appellant, in the presence of the witnesses, signed a statement admitting that she stole the merchandise. He stated that he did not coerce the appellant into signing the statement nor did he promise that he would not call police if she signed the statement. He stated that the value of the stolen merchandise was $148.82. Bissett stated that the appellant also admitted she had previously taken $59.03 worth of merchandise from the store. She stated that the merchandise was returned to the store in exchange for a merchandise card. Bissett confiscated the card, but he did not charge her for taking that merchandise. Bissett ultimately notified police.

After the appellant was arrested, her husband twice returned to the store, attempting to resolve the situation. Bissett told the appellant's husband to leave the premises.

Lisa Skiles, the appellant's community corrections officer, testified that she had been the appellant's community corrections officer since August 11, 2004. The appellant did not tell Skiles that she had previous convictions in 2003 for shoplifting and criminal trespass. During the August 11 meeting, the appellant signed a behavioral contract agreeing to pay fifteen dollars in supervision fees each month. At the time of the revocation hearing, the appellant was seventy-five dollars in arrears. Skiles stated that she tried to do curfew checks, but the appellant never answered her telephone. The appellant told Skiles that her husband turned the telephone off to circumvent curfew checks. Skiles acknowledged that the appellant reported on a regular basis.

Skiles testified that the address she had for the appellant was 2393 Pennsylvania Avenue; however, she was told by a security officer that the appellant's address was 903 Grayson Drive. Skiles admitted that she did not know which address was correct. Further, Skiles did not know whether the appellant had completed a requisite psychological examination.

Skiles testified that due to the situation in the appellant's household, she and her supervisor believed that the appellant was in physical and psychological danger. Skiles testified that the appellant had said that her husband made her steal things they needed for the home and the children. The appellant stated that her husband told her she would not get into trouble due to her mental illness. Skiles opined that the appellant's "mental situation is being taken advantage of," and she believed that revoking the appellant's probation would help to alleviate the danger.[1]

Skiles stated that as of two weeks prior to the hearing, the appellant had not complied with the conditions of her community corrections. She noted that the appellant had failed to attend appointments at Peninsula and had not attended parenting classes. Skiles said that during her supervision of the appellant, she became aware of the appellant's arrest in Knox County for shoplifting on October 29, 2004. Skiles stated that the appellant was taking the psychotropic

---

[1] We fail to see how the revocation of the appellant's community corrections sentence is an appropriate manner in which to address concerns regarding the appellant's safety.

medications Lithium and Effexor.

Bowling was recalled to the stand to explain that as a result of the September 28 shoplifting incident, the appellant was given a citation to appear at the processing center on October 29, 2004, for booking. Despite the appellant's failure to appear at the processing center, she was booked on October 29. The case on the September 28 incident had not yet gone to trial at the time of the revocation hearing.

The appellant testified that in October 2004, she was ordered to attend counseling at Peninsula and to attend parenting classes. She stated that she went to Peninsula and was prescribed new medication on December 8, 2004; however, she conceded that she did not attend parenting classes. The appellant asserted that the Home Depot theft case had been dismissed because the warrant or the citation was defective. The Lowe's theft case was scheduled for trial on January 13, 2005.

The appellant denied that she intended to steal items from Home Depot, explaining that when she and her husband were at Home Depot, they placed items in the shopping cart because they planned to purchase the items. Her husband bought the battery pack and left while the appellant went to look at flowers. The baby was crying, and the appellant left the store to get a soda for the children. The shopping cart went down a slope in front of the store, and the appellant ran after it. When she returned with the shopping cart, Bowling stopped her and grabbed her arm. He identified himself as store security and instructed her not to return to the store. The appellant maintained that she had intended to purchase the items in her shopping cart. The appellant admitted that she had been charged with shoplifting multiple times.

The appellant also testified regarding the incident at Lowe's. The appellant stated that when she was at Lowe's, she put the trailer hitches on the register on her way out of the store. While she was outside looking at flowers, Bissett approached her. The appellant stated that Bissett scared her, so she took a trowel from her shopping cart and placed it on a shelf in the plant display outside the store. The appellant maintained that she had intended to go back inside the store after she looked at plants. She acknowledged that she had signed the statement saying she had taken the items. However, she claimed that Bissett had promised her that if she signed the statement he would not call police and would allow her to leave. The appellant maintained that she and Bissett were alone when he made the promise.

The appellant stated that she and her husband moved to 2393 Pennsylvania Avenue approximately one month prior to the revocation hearing. She did not recall telling Skiles that her husband convinced her to steal.

At the conclusion of the hearing, the court stated:

> I think the State has established the violations. The evidence is that
> not only did [the appellant] commit these two thefts, she's also here

5

today misrepresenting things to me. She did not take advantage of the opportunity that I gave her to try to protect her and her children by ordering parenting classes and various appearances before Community Corrections, so there's nothing else – I can't do anything else. I've tried everything that I can try. And I don't believe you.

Accordingly, the court revoked the appellant's community corrections sentence and ordered the appellant to serve the balance of her original sentence in confinement. On appeal, the appellant contests the trial court's rulings.

## II. Analysis

Generally, community corrections sentences are governed by the Tennessee Community Corrections Act of 1985. See Tenn. Code Ann. § 40-36-101 (2003). The Act provides:

> The court shall . . . possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration.

Tenn. Code Ann. § 40-36-106(a)(3)(B)(4) (2003). A trial court may revoke a community corrections sentence upon finding by a preponderance of the evidence that an offender violated the conditions of his suspended sentence. See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). The trial court's revocation of a community corrections sentence will be upheld absent an abuse of discretion. Id. An abuse of discretion occurs if the record contains no substantial evidence to support the conclusion of the trial court that a violation of community corrections has occurred. See State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

On appeal, the appellant states that she "does not contest the sufficiency of the evidence proving she was in violation of one of the terms of her Community Corrections sentence, i.e. failure to report her arrests for shoplifting in Knox and Sevier counties." However, she maintains that not all of the allegations against her were proven at the revocation hearing. Further, the appellant claims that some of the allegations against her at the revocation hearing were made without giving her prior notice.

The record reflects that the appellant was clearly provided notice of the failure to report her arrests on September 29 and and September 14. Additionally, the warrant provided notice regarding her failure to pay court costs and supervision fees. The trial court found that the State met its burden of establishing that the appellant violated the conditions of her probation. From our review of the

record, we can find no evidence that the trial court abused its discretion in so finding. Further, as we noted earlier, the appellant admits that she violated the terms of her community corrections sentence. Accordingly, we conclude that the trial court did not err in revoking the appellant's community corrections sentence.

The appellant next argues that even if there was sufficient evidence to support the revocation of her community corrections sentence, the trial court abused its discretion in ordering her to serve the balance of her sentence in confinement. Specifically, the appellant "argues that her special need, i.e. her mental illness, is still best treated in the community with appropriate precautions for her safety and protection from the bad influence of her husband." The trial court has the discretion of determining the sentence to be imposed upon a revocation of a community corrections sentence, including ordering the original sentence to be served. Therefore, we conclude that the trial court did not abuse its discretion in ordering the appellant to serve the balance of her sentence in confinement.

### III. Conclusion

Finding no reversible error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE