STATE of Tennessee, Appellant,

v.

Emily Rose HARKINS, Defendant–Appellee.

Supreme Court of Tennessee,
at Jackson.

May 20, 1991.

Charles W. Burson, Atty. Gen. & Reporter, Joel W. Perry, Asst. Atty. Gen., Nashville, for appellant.

William D. Massey, Memphis, for defendant-appellee.

## OPINION

DROWOTA, Justice.

This is an appeal by the State of Tennessee from a judgment entered by the Court of Criminal Appeals reversing the decision of the trial court revoking the community corrections sentence imposed upon Emily Rose Harkins, Defendant–Appellee. The sole issue on appeal is whether the revocation of a community corrections sentence is subject to a *de novo* standard of review as held by the Court of Criminal Appeals. Although we affirm the results reached below, we hold that the intermediate appellate court should have applied an abuse of discretion standard of review.

In 1988, the Defendant pled guilty to one count of receiving and concealing stolen property, and one count of shoplifting over $200.00. She was sentenced to a term of three years pursuant to the Tennessee Community Corrections Act of 1985, T.C.A. § 40–36–101, et seq., and was placed under the supervision of a local community corrections program. Several conditions were made part of the sentence, including a provision prohibiting the Defendant from using drugs or alcohol, a requirement to report all arrests, obey all laws, and comply with all rules and policies necessary to implement the community corrections sentence. The Defendant agreed that failure to comply with any of these conditions would lead to a revocation of her sentence and result in incarceration for the balance of the sentence.

In 1989, a petition seeking to revoke the Defendant's community corrections sentence was filed by the Defendant's caseworker because the Defendant had been arrested for shoplifting and DUI. An evidentiary hearing was held which revealed that the Defendant was apparently not intoxicated with alcohol while driving, but was taking prescription pain medication because her lower teeth had been knocked out in an accident. Concerning the shoplifting arrest, the proof revealed that the Defendant was with a male companion (who testified at the evidentiary hearing) shopping. After realizing that she had forgotten to pick up a certain item, she gave several items that she was carrying and intended to buy to the companion to take to the counter. Instead of going to the counter, the companion concealed the items on his person, left the store, and drove away after store employees confronted him. Two hours later, the companion called the store and admitted that he was responsible for the crime and that the Defendant did not know anything about it. He also informed the prosecutor's office that he was the responsible party. According to the Defendant and her companion, Defendant did not see him conceal the merchandise and was unaware that he had even left the store. The State did not offer any evidence regarding the two offenses cited in the revocation petition.

The State's proof consisted solely of the testimony of Joyce Henderson who had been the Defendant's caseworker for approximately one year. Ms. Henderson stated that she filed the petition only to notify the court that the Defendant had been arrested as was her usual custom when one of her charges got into trouble. She stated without equivocation that it was not her intention for the trial court to revoke the Defendant's community correction sen-

tence because the Defendant had been remarkably responsive to the program. She also noted that the Defendant had completed house arrest for 180 days, was employed full-time, had nearly completed her community service hours, had paid her court costs, and was attending alcohol and drug meetings. Ms. Henderson also indicated that the Defendant was taking steps to complete her education and, for the first time in her life, was supporting her five children at home. Finally, the caseworker testified that the Defendant had made noticeable improvement in all aspects of her life, opining that she would be an excellent candidate to continue in the program because substantial and meaningful steps were being made toward rehabilitation.

At the conclusion of the hearing, the court revoked the community corrections sentence, indicating that the Defendant had used up her last opportunity for freedom when she was arrested. The court ordered her to serve the balance of her sentence: "A flat three, just like I promised you. You're to flatten three years, lady." The trial court's written order indicates that the Defendant "violated the terms and conditions of the order of sentence", but fails to specify the precise nature of the violation or identify which condition or term was violated. After undertaking a *de novo* review, the Court of Criminal Appeals reversed, holding that the record reflects that the Defendant was in full compliance with the conditions of her community corrections sentence, and that her attitude and continued desire to rehabilitate herself "vividly portrays what a community correction sentence can do for an individual." The intermediate appellate court also indicated that a mere accusation, standing alone, is not sufficient to justify a revocation and that the State is required to establish at least some facts that would permit the trial court to make a conscientious and intelligent judgment as to whether the conduct of the Defendant violated the conditions of her sentence.

The State contends that the *de novo* standard of review applied by the Court of Criminal Appeals does not apply to the revocation of community correction sentences. According to the State, the proper standard of review is the same as that used in probation revocation cases, an abuse of discretion standard. *See State v. Williamson*, 619 S.W.2d 145, 146 (Tenn.Cr.App. 1981) (revocation of suspended sentence will not be disturbed unless abuse of discretion is shown); *State v. Delp*, 614 S.W.2d 395 (Tenn.Cr.App.1980) (probation revocation proper when abused discretion is not established). The Defendant takes the position that the *de novo* review by the intermediate court was appropriate, consistent with precedent, and reflective of legislative intent considering the mandates of T.C.A. § 40–35–402. Parenthetically, we should point out that the underlying motivation of the legislature in providing for a community corrections sentence was to direct the trial courts of this state to help alleviate the overcrowded conditions in the state's prison system. T.C.A. § 40–36–103 proposes to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders...." Two of the express goals of this particular sentencing alternative is to reduce the number of nonviolent felony offenders in correctional facilities and to provide opportunities for these individuals demonstrating special needs to receive services which enhance their ability to provide for their families and become contributing members of their community. T.C.A. § 40–36–104.

The Court of Criminal Appeals relied upon T.C.A. § 40–35–402(d) (Supp.1988) for the proposition that appellate review is governed by a *de novo* standard since the sentencing hearing in this case was conducted prior to November 1, 1989, when the Criminal Sentencing Reform Act of 1989 became effective. The applicable statute at the time of the sentencing hearing was T.C.A. § 40–35–402(a) [1], which pro-

1. T.C.A. § 40–35–402 was repealed by the Criminal Sentencing Reform Act of 1989 and was replaced by T.C.A. § 40–35–401. The current version of § 40–35–401 provides that a *de novo*

vided in pertinent part that a criminal defendant "may appeal from the length, range, or the manner of service of the sentence imposed by the sentencing court." The statute also provides in subsection (d) that "[w]hen reviewing sentencing issues raised pursuant to subsection (a), including the granting or denial of probation and the length of sentence, the appellate courts shall conduct a *de novo* review on the record of such issues. Such review shall be conducted without a presumption that the determinations made by the court from which the appeal was taken are correct." The Court of Criminal Appeals indicated that this standard of review has been extended to sentencing issues concerning the Community Corrections Act of 1985. *See, e.g., State v. Meeks,* 779 S.W.2d 394, 396 (Tenn.Cr.App.1988); *State v. Huff,* 760 S.W.2d 633, 635 (Tenn.Cr.App.1988); *State v. Taylor,* 744 S.W.2d 919, 920 (Tenn.Cr. App.1987). The most recent case to use a *de novo* standard of review in the context of a community corrections sentence appears to be *State v. Grandberry,* 803 S.W.2d 706 (Tenn.Cr.App.1990).

## I.

■ We are persuaded that an abuse of discretion method of appellate review is applicable to issues which address the revocation of a community corrections sentence. First, T.C.A. § 40–35–402 (Supp.1988) provides that the granting or denial of probation, in addition to the length, range or manner of service of a sentence, is subject to a *de novo* standard of review. While the statute specifically includes within its scope granting and denying probation, it includes no reference to probation revocation, and omits completely any reference to community corrections sentences, whether such be granted, denied, or revoked. Normally, it is a rule of statutory construction which is well recognized by our courts, that the mention of one subject in a statute means the exclusion of other subjects that are not mentioned. *Southern v. Beeler,* 195 S.W.2d 857, 866 (Tenn.1946). It would ap-

pear that if the General Assembly intended to make the revocation of a community corrections sentence (or probation) subject to a *de novo* standard of review, it could have simply included such in the list of subjects contained in the statute. Its omission is significant, and it would be inappropriate for this Court to imply an entirely new topic into a statute that does not seek to address it in the first instance.

■ Second, and perhaps on a more fundamental level, a community corrections sentence, as a practical matter, closely resembles that of probation. Both are obviously alternatives to confinement designed for those criminal defendants who commit less serious crimes and who do not have extensive criminal records. Certainly, the two types of sentences are sufficiently similar in nature to make applying different standards of appellate review difficult to justify. We take note that a trial judge may revoke a sentence of probation or a suspended sentence upon a finding that the defendant has violated the conditions of his probation or suspended sentence by a preponderance of the evidence. T.C.A. § 40–35–311. The judgment of the trial court in this regard will not be disturbed on appeal unless it appears that there has been an abuse of discretion. *State v. Williamson,* 619 S.W.2d 145, 146 (Tenn.Cr.App.1981). In order for a reviewing court to be warranted in finding an abuse of discretion in a probation revocation case, it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred. *State v. Grear,* 568 S.W.2d 285, 286 (Tenn.1978); *State v. Delp,* 614 S.W.2d 395, 398 (Tenn. Crim.App.1980). The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment. *State v. Milton,* 673 S.W.2d 555, 557 (Tenn.Cr.App. 1984).

standard of review is to be used whenever a defendant in a criminal matter appeals the length, range, or manner of service of a sen-

tence, as well as the granting or denial of probation. The review carries with it a presumption that the trial court's determinations are correct.

Given the similar nature of a community corrections sentence and a sentence of probation, we hold that the same principles are applicable in deciding whether a community corrections sentence revocation was proper. The cases cited for the proposition that a *de novo* standard of review has been extended to sentencing issues concerning the Community Corrections Act of 1985, *Grandberry, Meeks, Huff,* and *Taylor,* all involve the denial of the imposition of a community corrections sentence on the front-end, but not the subsequent revocation of such a sentence.[2]

## II.

■ We are in complete agreement with the conclusion of the Court of Criminal Appeals that the Defendant was in full compliance with the conditions of her community corrections sentence and that her attitude, accomplishments, and continued desire to rehabilitate herself demonstrate how a community corrections sentence can work for the good of the individual involved, as well as for society. Perhaps the most significant testimony contained in the record in this regard came from the Defendant's caseworker, Joyce Henderson. Henderson stated that she felt that the program had been successful with the Defendant, noting that the Defendant attends church and is well liked in her community, diligently works with those attempting to help her within the program, and always

calls if there are any problems or concerns. She also indicated that the Defendant regularly attended alcohol and drug group therapy sessions throughout the year in which the Defendant was involved in the program and, further, during that time she had submitted to urine tests, all of which had come back negative. The caseworker testified that when the Defendant first began the program she was a "street junkie, a thief, liar, and not a very nice person." Now, however, the Defendant has been enhancing her job skills and increasing her opportunity for better employment, thereby permitting her to become a contributing member of society. Moreover, the Defendant is supporting her five children and her disabled mother, all of which live in the Defendant's home. Moreover, as stated previously, the caseworker indicated that it was not her intention for the trial judge to revoke the community corrections sentence because the Defendant had been remarkably responsive to the program in a variety of ways, not the least of which she has completed approximately six months of house arrest, is employed full-time, has nearly completed her community service hours, and has regularly paid court costs. Finally, the caseworker noted that she observed considerable improvement in the Defendant's family life, stating that "we would like to continue to work with Miss Harkins in completing her education and to make her family life fullfilled, because she's needed in her home."[3]

---

**2.** The cases have held that the following factors must be considered in the initial decision on whether to grant or deny a community corrections sentence: (1) any evidence received at the trial and/or sentencing hearing, (2) the presentence report, (3) the principles of sentencing, (4) the arguments of counsel relative to sentencing alternatives, (5) the nature and characteristics of the offense, (6) any mitigating or enhancing factors, (7) any statements made by the accused in his own behalf, (8) the accused's potential or lack thereof for rehabilitation or treatment, (9) the defendant's criminal record, social history, present physical and mental condition, and (10) the deterrent effect upon other criminal activity. *State v. Thomas,* 776 S.W.2d 547, 548 (Tenn.Cr.App.1989); *State v. Huff,* 760 S.W.2d 633, 635–36 (Tenn.Cr.App.1988); *State v. Taylor,* 744 S.W.2d 919, 920 (Tenn.Cr.App.1987).

**3.** As an aside, we take note that the State did not offer any evidence regarding the offenses cited in the revocation petition and, thus, we are left to consider only the Defendant's version of events. Although the proof demanded by the State in a revocation hearing need not rise to the level of beyond a reasonable doubt, we agree completely with the following observation made by the Court of Criminal Appeals in this case: "A mere accusation, standing alone, is not sufficient to justify the revocation of a community corrections sentence. To the contrary, when, as here, the ground for revocation of an accused's community corrections sentence is the commission of a new offense, the State is required to establish sufficient facts during the revocation hearing to permit the trial judge to make a conscientious and intelligent judgment as to whether the conduct in question violated the law...."

Considering the record as a whole, we find there is no substantial evidence to indicate that the Defendant violated the terms of her community corrections sentence. Also, we are persuaded that it is in the best interest of the Defendant and society for her to continue in the present program given the strong likelihood that she will successfully complete the program, as well as rehabilitate herself in the process given her history of cooperation and participation. While the trial courts are encouraged to sentence worthy individuals pursuant to the provisions of the Community Corrections Act, it must be remembered that these issues, like every sentencing issue, must be determined by the facts and circumstances presented in each individual case.

For the foregoing reasons, the judgment of the Court of Criminal Appeals is affirmed as modified. Costs are adjudged against the State.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.