# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 25, 2003

## STATE OF TENNESSEE v. JESSE DAVID TEASLEY

**Direct Appeal from the Criminal Court for Knox County**
**Nos. 70105, 72732     Mary Beth Leibowitz, Judge**

---

**No. E2002-02011-CCA-R3-CD**
**March 27, 2003**

---

The Defendant appeals from the Knox County Criminal Court's revocation of his probation. He contends that the trial court abused its discretion in revoking his probation and ordering him to serve the remainder of his sentences in confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Bruce E. Poston, Knoxville, Tennessee, for the appellant, Jesse David Teasley.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Patricia Cristil, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. FACTUAL BACKGROUND

#### A. Procedural History

On March 1, 2000, the Defendant pled guilty to two counts of theft of property valued over $500, Class E felonies, and on August 4, 2000, the trial court sentenced him to serve concurrent two-year sentences for the convictions. On October 4, 2000, the Defendant was placed on determinate release probation by the Tennessee Board of Probation and Parole. On May 22, 2001, the Defendant was sentenced to four years for aggravated assault. The trial court ordered that the sentence be served on enhanced probation and consecutively to his sentences for theft. On October 12, 2001, the Defendant's probation in both cases was revoked and he was ordered to serve his sentences in custody. However, the Tennessee Board of Probation and Parole again placed the Defendant on determinate release probation on March 16, 2002. On May 10, 2002, a violation of probation

warrant was issued against the Defendant. The warrant, as amended, alleged the following six violations: (1) driving without a license on March 27, 2002; (2) failing to report to his probation officer and missing his curfew on May 7, 2002; (3) refusing to take a drug screen on May 8, 2002, and admitting to prior use of marijuana; (4) being charged with evading arrest on June 29, 2002; (5) failing to pay court costs as directed; and (6) failing to complete community service work. On July 26, 2002, following a hearing, the trial court revoked the Defendant's determinate release probation and ordered that he serve the effective six-year sentence in the Tennessee Department of Correction. The Defendant now appeals, arguing that the trial court erred by revoking his probation.

## B. Revocation Hearing

L. Mooneyham, the Defendant's probation officer, testified that the Defendant was assigned to her supervision on March 16, 2002 and that the Defendant reported once a week until May 7, 2002. However, on May 7, 2002, the Defendant failed to report, so Mooneyham went to the Defendant's home at 6:45 p.m. to make sure that he had adhered to his 6:00 p.m. curfew. She discovered that the Defendant was not at home, and she left him a note asking him to call her immediately. Mooneyham testified that the Defendant called her the next day and told her that he would have to walk to the probation office, and she responded that he had to report. According to Mooneyham, the Defendant reported to her office at approximately 1:00 p.m. on May 8, 2002.

Mooneyham testified that the Defendant said that he had been unable to report as scheduled because he had gone on a trip, and the bus that he was on had broken down. She stated that the Defendant also told her that he had lost his offender identification. Mooneyham then requested that the Defendant give her a urine sample for a drug screen. However, she stated that the Defendant claimed that he was too sick to give a sample. Mooneyham testified that the Defendant admitted to her that he had used marijuana, but he did not say when that occurred.

Mooneyham reported that the Defendant was responsible for his court costs and paid them through May. However, she stated that after she issued a warrant for him on May 10, 2002, he did not pay any more court costs. Mooneyham noted that the Defendant owed eight hours of community service for April 2002, but stated that he performed his community service in May 2002.

Mooneyham testified that the Defendant was charged on June 29, 2002 with evading arrest. When asked how she thought the Defendant would perform on probation, Mooneyham responded, "I feel that, looking at [the Defendant's] record, he's had several chances, knowing what his responsibilities were, and I also advised him when I first received him on probation that he was on determinate release and he needed to abide by the rules to the letter, and at that time he said he would." Mooneyham identified in court a copy of the Defendant's determinate release certificate which outlined the Defendant's responsibilities on determinate release. She stated that the document was generated at the Tennessee Department of Correction. Mooneyham testified that the TDOC reviewed with the Defendant each and every rule on the document, and the Defendant signed the document.

On cross-examination, Mooneyham testified that prior to May 7, 2002, the Defendant reported as required. She testified that the Defendant called her on May 8, 2002 after failing to report the previous day. According to Mooneyham, the Defendant said that he was sick and that he would have to walk to the probation office. However, she stated that after May 8, 2002, she did not see the Defendant again until he was arrested in June 2002. She acknowledged that May 8, 2002 was the only time the Defendant refused to take a drug screen and that the Defendant had passed all prior drug screens. Mooneyham noted that the Defendant told her that he was too sick to give a urine sample. She testified that the Defendant lacked eight hours to be current on his community service requirements. Mooneyham stated that it was possible that she would have made a different recommendation if the Defendant had turned himself in after she advised him that she was going to take a warrant out for his arrest because "that would have shown that he's trying to be responsible and do the right thing."

Michael Echerd testified that he is employed by the Board of Probation and Parole. He stated that he was present in the office on May 8, 2002 and that Mooneyham asked for his assistance in obtaining a urine sample from the Defendant. Echerd testified that the Defendant "took quite a while to go" and that he said he "was feeling sick and couldn't go to the restroom." However, Echerd reported that the Defendant did not appear to be sick.

On cross-examination, Echerd maintained that the Defendant never stated that he was taking any medication. He testified that the Defendant said he had to walk to the probation office. Echerd recalled seeing the Defendant drink water from the water fountain. He testified that while in the restroom, he "heard regurgitating sounds" from the Defendant.

The Defendant admitted that he failed to report to his probation officer on May 7, 2002. He stated, "We was [sic] up on Highway 441 at a water slide, and we had mechanical problems with the vehicle that we was [sic] in and had to call a tow truck to tow us in, and it was roughly about 4, 4:30 when the car broke down. We got the tow truck, and he towed us to the shop . . . over there by Elm Street. We got back . . . to the tow shop about 8, 8:30." The Defendant testified that he did not arrive home until around 9:30 p.m., at which time he found a note on the door from Mooneyham. He stated that he was not feeling well, so he opted to call Mooneyham the next morning.

The Defendant testified that when he called Mooneyham the next morning, she told him to report to her office. He told her that he would have to walk to the probation office. The Defendant testified that he was on medication "to help [him] urinate" and that he was seeking medical treatment for possible prostate problems. He stated that he had seen Dr. Waters at the University of Tennessee Hospital and Dr. Meisenheimer at the Baptist Professional Building. The Defendant claimed that if he did not eat before taking the medication, he would become nauseated.

The Defendant recalled that on May 8, 2002, he took his medication and began walking to the probation office. He estimated that the walk was about four or five miles, and he stated that he called Mooneyham several times along the way to let her know that he was still coming. Once at the office, the Defendant testified that he vomited. He recalled that Mooneyham told him to drink

some water, but he stated that he was unable to keep the water down. The Defendant maintained that he was dehydrated. He testified that Mooneyham told him that she was going to file a violation of probation warrant against him the following week.

The Defendant admitted that he knew that a warrant had been filed against him; yet he did not turn himself in to the authorities. He stated, "I kept calling and telling [Mooneyham] I was coming, but I kept having these health problems and I was scared and I was nervous and scared that my health wasn't going to be right, if I got here I wouldn't be took [sic] care of . . . so I was . . . trying to . . . buy time . . . to try to get myself, healthwise, straightened out." The Defendant testified that he was seeking medical treatment during this period of time. He acknowledged that the jail has medical facilities. However, he stated that "it's kind of hard to get things done" and that he was "in a lot of pain and suffering." The Defendant maintained that he was concerned that he would not get proper medical treatment if he turned himself in to the police. He stated that his condition had "flared back up" since he had stopped taking his medication. He testified that he "was trying hard . . . to do good and trying to better" himself. However, he stated that he "could do better."

On cross-examination, the Defendant testified that he missed his curfew on May 7, 2002 because he had been out with his children and his grandchildren. He stated that he knew he had to report by 6:00 p.m. and that he had to be home by 6:00 p.m. The Defendant maintained that he did not call Mooneyham to say that he would not be able to report as scheduled because everything happened "so instantaneously that . . . [he] was really stranded between a rock and a hard place." He acknowledged that he had Mooneyham's cell phone number, but he stated that he had to stay with his children and his grandchildren. The Defendant testified that he did not call Mooneyham when he got home on May 7th because it was so late.

The Defendant recalled that it took him about two or three hours to walk to the probation office on May 8th. He admitted that he had smoked marijuana within the month of May, and he acknowledged that he knew it was a violation of his probation to smoke marijuana. However, he claimed, "I just made a mistake." The Defendant also admitted that he did not report to Mooneyham after May 8, 2002, but he stated that he "kept . . . in contact." He testified, "I knew I would be arrested, and I was panicked, and I was frightened and scared of going back to jail . . . ." The Defendant testified that he had been taking "Naproxen, Unirol (phonetic)," "Flexeril," and an antibiotic that he thought was called "Keflex." He stated that he was also "using a breathing thing, and taking breathing treatments." The Defendant explained that the "Urinol" was "to help [him] urinate." He stated that he talked to Mooneyham about his health problems and "even took some of [his] medicine to the probation office . . . and turned it in to her."

## II. ANALYSIS

The Defendant argues that the trial court abused its discretion by revoking his probation. Specifically, he contends that his performance while on enhanced probation was relatively satisfactory and that he had a "medical necessity" that prohibited him from complying with the terms of his probation. When a trial court determines by a preponderance of the evidence that a

probationer has violated the conditions of his or her probation, the trial court has the authority to revoke probation. Tenn. Code Ann. § 40-35-311(e). Once the trial court makes such a finding, it is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . ." Id. When probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension . . . ." Id. § 40-35-310.

The decision to revoke probation is in the sound discretion of the trial judge. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, the record must be void of any substantial evidence that would support the trial court's decision that a violation of the conditions of probation occurred. Id.; State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Proof of a probation violation is sufficient if it allows the trial court to make a conscientious and intelligent judgment. State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984).

In this case, the trial court noted that the Defendant had been on probation numerous times and had twice been placed on determinate release. The court stated that the Defendant "ha[d] spent half of his life, from the age of 21 to . . . the age of 42, in criminal trouble, and the only times that he'd not been in trouble was when he was serving sentences." It noted that the Defendant did not introduce any independent evidence of his medical problems. The court stated that the Defendant admitted that he had smoked marijuana and that he knew that he had violated the rules of his probation. The trial court found that the Defendant's "failure to be truthful" with the court in the past and at the current hearing "result[ed] in his testimony basically being discredited."

The evidence at the probation revocation hearing established that the Defendant violated the terms and conditions of his probation. He violated his curfew, failed to submit to a drug screen, admitted to using marijuana, neglected to pay all court costs, and was behind in his community service. The trial court therefore had the authority to revoke his probation. The record does not indicate that the trial court abused its discretion in exercising such authority. In our view, the trial court exercised conscientious judgment in revoking the Defendant's probation and ordering him to serve his sentence in confinement.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE