IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 14, 2009

## STATE OF TENNESSEE v. STEPHANIE MAYFIELD

**Direct Appeal from the Circuit Court for Madison County**
**Nos. 02-702, 03-119     Donald H. Allen, Judge**

_____

**No. W2008-02534-CCA-R3-CD  - Filed January 26, 2010**

_____

The defendant, Stephanie Mayfield, appeals the Madison County Circuit Court's revocation of her community corrections sentence and subsequent resentencing. The defendant, in two separate cases, pled guilty to ten counts of Class D felony identity theft and received an effective four-year sentence to be served in the Community Corrections Program. A violation warrant was later issued, alleging that the defendant had violated the terms and conditions of her agreement. Following a revocation hearing, the trial court ordered revocation of the defendant's community corrections sentence. After a sentencing hearing, the court again imposed sentences of four years for each conviction but ordered that the two sentences be served consecutively for an effective sentence of eight years. On appeal, the defendant contends that the trial court erred in ordering revocation based upon the testimony of the current case officer. The defendant further challenges the imposed sentence due to the reliance on prior criminal charges and the imposition of consecutive sentencing. Following review of the record, we find no error and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. NORMA MCGEE OGLE, J., concurred in results only.

A. Russell Larson, Jackson, Tennessee, for the appellant, Stephanie Mayfield.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

The underlying facts of the case, as recited in the presentence report, are as follows:

According to Ms. Carolyn Crawford, on or about January 15th, 2002, [the defendant] stole Ms. Crawford's Social Security number, using it and Ms. Crawford's date of birth to obtain credit cards. After being notified by Discovery Card staff of the situation, she was able to block her credit accounts and thus prevented [the defendant] from use of said cards.

On [March 17, 2002], Ms. Kimberly Stanfield notified the Sheriff's Department that a co-worker, [the defendant], had used personal information to obtain credit cards, noting that there are at least [seven] unauthorized attempts which she never requested.

On [September 27, 2002], Ms. Paulette Marshall came to the Police Department and reported her personal information had been used in order to apply for a Capital One credit card. The credit card company verified that a card had been issued and that several charges had been made to that account. [The defendant] became a suspect. Ms. Marshall reported they were co-workers and that [the defendant] did have access to her personal information. According to Capital One, total loss is $411.00.

Subsequently, a Madison County grand jury returned indictments in two separate cases charging the defendant. In Case No. 02-702, the defendant was charged with four counts of identity theft, and, in Case No. 03-119, she was charged with six counts of identity theft. Following the denial of her request for pretrial diversion, the defendant entered negotiated guilty pleas to all counts. Pursuant to the agreement, she received a sentence of four years for each count, with all counts to be served concurrently. The agreement further provided that a hearing was to be held to determine if judicial diversion was appropriate and, if not, that the sentence was to be suspended and served in the Community Corrections Program. Following the sentencing hearing, judicial diversion was denied, and, in November 2003, the defendant was sentenced to an effective four-year term, to be served on community corrections.

In April 2005, a violation warrant was issued, alleging that the defendant had violated the terms and conditions of her community corrections agreement. Specifically, the report charged that the defendant had violated the terms of her agreement by: (1) failing to report to her probation officer since February 22, 2005; (2) remaining out past curfew on December 3, 2004, February 27, 2005, and April 10, 2005; (3) failing to pay costs and restitution, with the last payment being February 17, 2005; (4) failing to obtain permission prior to changing her address; (5) failing to report being discharged from full-time employment; (6) failing to

-2-

make a full and truthful report to her probation officer; and (7) absconding the judicial district. Though issued in 2005, the warrant was not served on the defendant until July 2008.

A revocation hearing was held at which Cindy Cooper, a Madison County community corrections case officer, and the defendant testified. Ms. Cooper testified that she inherited the defendant's file in April 2006 from a former case officer, Ruby Schuler, who was no longer employed with the Department of Community Corrections. Ms. Cooper testified that when she received the defendant's file, the violation warrant had already been issued and was outstanding. She further stated that she had never met the defendant personally, as the defendant had not reported since she took over the case. Ms. Cooper acknowledged that she had made no attempt to contact the defendant although the violation warrant remained outstanding. Based upon the information in the file, Ms. Cooper testified that the defendant had not reported since March 2, 2005, and had failed to pay anything toward fines or costs since February 17, 2005. The other charged violations, such as curfew violations and address changes, were stricken because Ms. Cooper had no personal knowledge of the violations as they had been conducted by the prior case officer.

The defendant acknowledged that she failed to report after February 22, 2005, and stated that she had been "working a lot" of "rotat[ing] shifts" at the Milan Arsenal, where she had been employed for three and a half years. According to the defendant, she attempted to contact Ms. Schuler, but her voice mail was always full. The defendant also testified that she visited Ms. Schuler's office "several times" but was told that she was not in the office. She further acknowledged that she had moved to Beech Bluff from her original address and then moved to Henderson County during the week prior to her arrest.

With regard to her payment of costs and restitution, the defendant asserted that she had paid the entire balance in one case and believed that amount was her entire balance. She also testified that she had spoken with her employer and that she would be able to return to work if she was again sentenced to a probationary sentence.

On cross-examination, the defendant stated that she had tried to contact Ms. Schuler until "sometime in '06," when she found out that Ms. Schuler was no longer employed with the Community Corrections Program. The defendant further testified that she both called and visited the community corrections offices and that they were unable to give her information about her new supervising officer. According to the defendant, someone in the office informed her that "somebody would be contacting" her. She did acknowledge that she had made no payments toward her restitution and costs but, again, stated that she believed that they were paid in full.

Upon questioning by the trial court, the defendant again acknowledged that she had not reported since February 2005. She reiterated her claim that she had visited the probation office on multiple occasions and had asked "the lady at the front desk" who her new officer was. The defendant denied that anyone in the community corrections office had informed her of the outstanding warrant. Finally, the defendant admitted that she moved from her original address to Beech Bluff without gaining permission from Ms. Schuler. She asserted, however, that she called the community corrections officer and relayed the information after the move.

Ms. Cooper was then recalled and testified that the office had a computerized case management system and, further, that she was listed as the defendant's case officer in that system. According to Ms. Cooper, anyone working the front desk at the office would have access to this information.

After hearing the evidence presented, the trial court determined that the defendant had violated the terms and conditions of probation and removed her from the Community Corrections Program. Subsequently, a resentencing hearing was held. The only proof admitted at the hearing was the presentence report and letters from the defendant's former employer and landlady. Following the hearing, the trial court again imposed four-year sentences for each conviction, to be served in the Department of Correction, and further ordered that the convictions in case numbers 02-702 and 03-119, be served consecutively for an effective sentence of eight years. Subsequently, notice of appeal was filed.

**Analysis**

On appeal, the defendant presents challenges to both the revocation of her probation and the subsequent imposition of consecutive sentencing. Specifically, she contends that: (1) the trial court erred in conducting a hearing and revoking the probation in the absence of the original probation officer; and (2) the court imposed an excessive sentence by relying upon prior criminal charges from Obion County and imposing consecutive sentencing. As an initial matter, the State contends that the appeal should be dismissed as the defendant failed to file a timely appeal.

Rule 4(a) of the Tennessee Rules of Appellate Procedure states that the notice of appeal "shall be filed . . . within 30 days after the date of entry of the judgment appealed from[.]" We agree with the State that the defendant was not in compliance with this rule as the judgments were entered on October 1, 2008, and the notice of appeal was not filed until November 3, 2008.

However, Rule 4(a) states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). In determining whether waiver is appropriate, this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case. *State v. Markettus L. Broyld*, No. M2005-00299-CCA-R3-CO (Tenn. Crim. App. at Nashville, Dec. 27, 2005). Waiver is not automatic and should only occur when "the interest of justice" mandates waiver. *State v. Scales*, 767 S.W.2d 157, 158 (Tenn. 1989).

The State argues that waiver is not appropriate in this case because the defendant has not sought relief from this court from the untimely filing of the notice of appeal. While we agree with the State that the defendant has failed to acknowledge the untimely notice of appeal, we, nonetheless, conclude that the interest of justice mandates review in this case, based upon the completeness of the record and judicial economy to resolve the raised issues.

## I. Revocation

First**,** the defendant contends that the trial court erred in revoking her sentence of community corrections when her supervising probation officer was not present and available for subpoena. The defendant specifically asserts that she was denied the opportunity to confront and cross-examine Ruby Schuler, who was the only witness who could have disputed the testimony given by the defendant.

The decision of a trial court to revoke a defendant's probation is reviewed under an abuse of discretion standard. *State v. Harkins*, 811 S.W.2d 79, 83 (Tenn. 1991). In a revocation case, a trial court will not be found to have abused its discretion unless the defendant shows "that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *Id*. at 82. Substantial evidence of a violation need only be supported by a preponderance of the evidence. *State v. Wall*, 909 S.W.2d 8, 9 (Tenn. Crim. App. 1994). Such evidence will be deemed sufficient "if it allows the trial judge to make a conscientious and intelligent judgment." *Harkins*, 811 S.W.2d at 82. Appellate review of the trial court's judgment entails an examination of the record to determine whether it contains evidence showing that the trial court's exercise of its statutory authority to revoke the suspension and impose the original sentence was not arbitrary but was within the trial court's sound discretion. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991); *see also* T.C.A. § 40-35-310 (2006).

As an alternative or non-incarcerative sentence, "a community corrections sentence, as a practical matter, closely resembles that of probation." *Harkins*, 811 S.W.2d at 82.

"Given the similar nature of a community corrections sentence and a sentence of probation, we hold that the same principles are applicable in deciding whether a community corrections revocation was proper." *Id.* at 83. The Community Corrections Act explicitly gives the trial court "the power to revoke the sentence imposed at any time due to the conduct of the defendant. . . ." T.C.A. § 40-36-106(e)(4) (2006). Although the Act imposes special procedures that must be followed when a trial court resentences a defendant to an increased sentence after finding that he or she has violated the program, whether a violation has occurred is determined by and reviewed under the same standard as that for probation violations. *State v. Crook*, 2 S.W.3d 238, 241 (Tenn. Crim. App. 1998); *see also* T.C.A. § 40-36-106(e)(2), (4).

In revoking the defendant's sentence, the trial court made the following findings of fact:

> In this case the Court finds that [the defendant] has in fact violated the terms and conditions of her probation in a substantial way those being that she has failed to report every two weeks to visit with her probation officer. Now, I believe Ms. Cooper has testified that according to the records with the Community Corrections office, it appears that [the defendant] last reported to their office either February the 22nd of 2005 or perhaps March the 2nd of 2005, but clearly she has not reported to their office since that time. I understand she testifies that she has reported, but I [do not] find her testimony credible at all. You know, I tend to believe that if she showed up to that office and said I'm here to report to my probation officer and Ms. [Schuler] is my probation officer and if Ms. [Schuler] was no longer employed there, somebody from that office would have made sure that she met with whoever the new probation officer was which in this case was Ms. Cindy Cooper. It makes absolutely no sense that she would just show up there and then turn around and leave. I just [do not] find her testimony credible at all with regards to her saying that she has reported.

> I do credit Ms. Cooper when she testifies that to her knowledge this defendant has not reported since March the 2nd of 2005 which would be over three years she's gone without reporting to her probation officer. Again, the proof is that she was supposed to report every two weeks.

> Also the Court finds that she violated probation by failing to pay $75 per month as ordered on her court costs and restitution. It would appear that the last payment made was February the 17th of 2005. I understand she indicates that she thought she paid everything off, but again it's her

-6-

responsibility to make sure when she makes her payments to the clerk's office that she had paid everything off. According to what has been testified to, she still owes quite a bit on her court costs and restitution and she certainly had the ability to pay. She testified that she had been working at the Milan Arsenal this whole time and certainly had the ability to pay but chose not to pay for whatever reason. The Court finds that she did wilfully violate probation by failing to make her payments each and every month.

Also the Court finds that she failed to obtain special permission from her case officer before changing her residence. [She has] testified here today that she had discussed with Ms. [Schuler] the fact that she might move, but clearly from her testimony she moved to another location without notifying Ms. [Schuler]. It [was not] until after she had already moved to Beech Bluff, Tennessee, away from Jackson, that she attempted according to her testimony to contact Ms. [Schuler] who apparently was not working there any longer at that time so, again, the Court finds that she did in fact move without permission of her case officer in this case.

Obviously since she has not reported in over three years, the Court finds that she has absconded from probation.

Review of the record fails to reveal that the trial court's decision to revoke the defendant's sentence was an abuse of discretion. As noted by the State, it chose to proceed only upon the charged violations that Ms. Cooper had personal knowledge of because Ms. Schuler was not available to testify with regard to the other alleged infractions, despite the fact that they were the type of violations this court has previously found to be admissible as reliable hearsay from the violation report. *See State v. Wall*, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994). Nonetheless, with regard to the failure to report and the failure to pay costs, Ms. Cooper gave specific testimony that the defendant had failed to comply. Moreover, the defendant herself admitted that she had not reported or paid costs. The trial court, making a credibility determination, rejected her asserted reasons for not complying, and it is not the province of this court to reweigh either the credibility or the validity of excuses. Additionally, the defendant testified that she had moved prior to gaining approval from Ms. Schuler. A violation of only one condition of probation is necessary to support revocation. There was substantial and credible evidence of multiple violations. As such, we are unable to conclude that the trial court failed to exercise its conscientious and intelligent judgment in revoking the sentence. The defendant's argument is without merit.

## II. Resentencing

The defendant asserts two errors with regard to her resentencing. The first involves the trial court's reliance upon information contained in the presentence report, specifically, prior charges in Obion County in 1996 and 1997. The presentence report indicates that the cases remain pending; thus, no convictions have actually occurred. The defendant argues that it was error to rely upon "these [eleven]-year[-]old stale and non-prosecuted cases" in determining her sentence. She asserts that the reliance on the Obion County charges was an abuse of discretion and should be reversed.

After review, we must reject the defendant's argument. Initially, we are constrained to note that the defendant's argument is somewhat unclear, as she appears to imply that reliance on this resulted in both improper revocation and an improper sentence. Clearly, the trial court did not rely upon this conduct to support the revocation, as it was not made available to the court until the sentencing hearing. We would further note that the abuse of discretion standard is not applicable if we address this in the context of sentence imposition. Rather, this court reviews sentencing under a *de novo* standard with a presumption of correctness. *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Regardless of the standard we apply, however, the defendant's arguments are factually incorrect. The court, although noting that the Obion County charges existed and that the charges were still pending, specifically stated that "I don't really hold these against her." From this statement, it is clear that the trial court did not rely upon those convictions in resentencing the defendant. Thus, the defendant's assertion is misplaced.

Second, the defendant contends that the trial court erred in ordering consecutive sentencing following resentencing. Specifically, she asserts that "it [was] error for the Court to increase the sentence of a probationer at a revocation hearing" by imposing consecutive sentences because it made the sentence more onerous than the original imposed sentence. *State v. Merriweather*, 34 S.W.3d 881 (Tenn. Crim. App. 2000). This argument is misplaced.

While we would agree with the defendant's argument that a trial court may not increase a probationary sentence after finding a violation, that is not the situation before this court. T.C.A. § 40-35-311(d) (2006) (the most severe punishment available upon revocation of probation is for the court to commence the execution of the judgment as originally entered). The defendant in this case was on community corrections, not probation. Although the two are similar, distinctions do exist. One such distinction is that the Community Corrections Act specifically allows a court to increase the length of the sentence up to the maximum of the sentencing range of the original sentence imposed provided that proper procedures are followed at the new sentencing hearing. *Samuels*, 44 S.W.3d at 494 n.2. Further, the authority of the trial judge to "alter or amend at any time the length, terms, or conditions of the sentences imposed[,]" T.C.A. 40-36-106(e)(2), has been repeatedly interpreted by this court to allow for the imposition of consecutive sentences. *Id.* at 496.

Thus, provided that the trial court considered all the requisite principles of sentencing, there was no statutory bar to resentencing the defendant to consecutive sentences.

We note that the defendant does not challenge the trial court's findings that consecutive sentencing was appropriate, only that it was statutorily precluded. Nonetheless, our review supports that the trial court correctly imposed consecutive sentencing based upon the defendant's prior extensive criminal history. Consecutive sentencing is appropriate, pursuant to Tennessee Code Annotated section 40-35-115(b)(2) (2006), if the court finds that the offender has an extensive criminal history. *See also State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997) (extensive criminal history alone is sufficient to justify consecutive sentencing).

Our review reveals that the trial court considered all relevant sentencing principles, as well as all relevant facts and circumstances, pursuant to the mandates of *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). Accordingly, we afford the presumption of correctness. We find nothing to dispute the trial court's finding that the defendant's criminal history was extensive as evidenced by her convictions for ten counts of identity theft, as well as her multiple prior misdemeanor convictions for writing bad checks and the fraudulent use of a credit card. Thus, we find no error in the court's imposition of consecutive sentencing.

**CONCLUSION**

Based upon the foregoing, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE