# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 22, 2015

## STATE OF TENNESSEE v. DEWAYNE LEE WILLIAMS

**Appeal from the Criminal Court for Hamilton County**
**No. 286972     Barry A. Steelman, Judge**

---

### No. E2014-00964-CCA-R3-CD - Filed February 3, 2015

---

The Defendant, Dewayne Lee Williams, appeals the Hamilton County Criminal Court's order revoking his probation for his convictions for aggravated burglary and vandalism and ordering his effective three-year sentence into execution. The Defendant contends that the trial court abused its discretion because insufficient evidence exists to support the revocation. We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Chris Dixon, Chattanooga, Tennessee, for the appellant, Dewayne Lee Williams.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; William H. Cox III, District Attorney General; and Amanda Morrison, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On September 15, 2010, the Defendant pleaded guilty to aggravated burglary in case number 271899 and received a four-year sentence to be served on probation. On November 15, 2011, a probation violation report was filed alleging the Defendant was arrested for multiple charges including aggravated burglary and vandalism. The report also alleged that the Defendant failed to "provide required documentation to his Officers" and to pay supervision fees and restitution and that he absconded from supervision. Following a probation revocation hearing on May 21, 2013, the trial court ordered the Defendant to return to probation after serving eleven months and twenty-nine days in confinement. Also on May 21, 2013, the Defendant pleaded guilty to aggravated burglary and to vandalism in the

present case and was sentenced to an effective three years to be served on probation after serving eleven months and twenty-nine days in confinement. The court also ordered that the Defendant have no contact with the victim, Sharika Jones, and that the sentence run consecutively to his sentence in case number 271899.

On January 7, 2014, a probation violation report was filed alleging that on December 18, 2013, the Defendant and Antonio Nichols were charged with aggravated burglary, vandalism, and malicious mischief for attempting to break into the residence of Byron[1] and Alisha Morgan. The affidavit of complaint states that Ms. Morgan was home at the time, that she called 9-1-1, and that she reported the suspects were attempting to enter her home through the front door. Ms. Morgan reported that she heard banging on the door, that she became scared, and that she locked herself in her bedroom and called the police. The investigating officer noted in the affidavit of complaint that the front door handle was broken but that it had not been broken earlier that day. The report also alleged that the Defendant was $400 in arrears in supervision fees and had not made any payments since February 11, 2011.

At the probation revocation hearing, the parties stipulated that Mr. and Ms. Morgan were present at the preliminary hearing relative to the new criminal charges but that neither could identify the Defendant as one of the men attempting to break into their home. The prosecutor told the trial court that because the victims could not identify the Defendant and because Investigator Michael Early was unable to attend the preliminary hearing, the charges were dismissed by the State in the general sessions court. The prosecutor explained that the case would later be presented to the grand jury.

Chattanooga Police Officer Jeff Lancaster testified that on the night in question, he responded to a burglary-in-progress call. The caller told the 9-1-1 dispatcher that someone was beating on her door and that it sounded as though "they" were attempting to open the door. When Officer Lancaster arrived at the scene, other police officers were "dealing with" two people inside a white Ford Crown Victoria parked in front of the home. He entered the home and spoke with the "juvenile female" who lived there. He identified the Defendant as the driver of the parked car outside the house and said Antonio Nichols was in the passenger seat.

---

[1] Although the affidavit of complaint reflects the name Barry Morgan, defense counsel clarified for the trial court that his name is Byron.

Officer Lancaster testified that he attended court on the day the preliminary hearing was scheduled but that Investigator Early was unable to attend the hearing. He stated that because the victim who was home at the time of the incident could not identify the Defendant, the case was dismissed.

On cross-examination, Officer Lancaster testified that he arrived at the scene about three or four minutes after the 9-1-1 call. He said the Crown Victoria was parked toward the right side of the front yard, not directly in front of the house. He agreed that police dispatch did not provide information about the suspects or their vehicle. Sergeant Burns was the first officer at the scene and saw the Crown Victoria parked along the road in front of the residence.

Officer Lancaster testified that his investigation showed the handle to the front glass door was broken and removed from the door. He said Officer Clay found the handle in the side yard. Officer Lancaster did not recall seeing damage to the main door, and he did not know if the glass door was locked. He briefly spoke to the Defendant and Mr. Nichols but did not question them about the incident.

On redirect examination, Officer Lancaster testified that Investigator Early was called to the scene and interviewed the Defendant. On recross-examination, he stated that the Crown Victoria was parked when officers arrived at the scene.

Chattanooga Police Investigator Michael Early testified that he was told two suspects had been detained after police dispatch received a burglary-in-progress call. He drove to the scene and questioned the Defendant and Mr. Nichols. He learned from the Defendant's interview that "[they] came there to break into the house." However, Mr. Nichols told Investigator Early that they were attempting to obtain money from Mr. Nichols's girlfriend's sister. Mr. Nichols's girlfriend, though, told Investigator Early that her sister did not live there and that Mr. Nichols was not supposed to obtain money from her sister.

Investigator Early testified that he placed the Defendant and Mr. Nichols inside his police cruiser, read them their *Miranda* rights, and questioned them about the incident. The Defendant initially denied knowing why they were there, and Investigator Early told the Defendant to be truthful and advised he knew the Defendant was the driver and not the person attempting to gain entry to the house. The Defendant admitted that he picked up Mr. Nichols and that they were "supposed to go hit a lick," which meant to steal something or to rob someone according to Investigator Early's experience.

On cross-examination, Investigator Early testified that he was currently assigned to a desk position. His police cruiser did not have recording equipment, but he told Officer Lancaster about the Defendant's statement. He did not assist Officer Lancaster in preparing the police report and noted the report stated, "As they're planning to break in the house." He did not look at the front door of the house or speak to the victim who was home at the time of the incident.

On redirect examination, Investigator Early clarified that the Defendant stated that they were there to break into the house. He denied his current desk position was related to the present case or his police-related duties.

Warren Mines, the Defendant's father, testified for the defense that the Defendant could live with him if released from custody. Although Mr. Mines did not own a vehicle, public transportation stopped near his home. He had lived at his current address for twenty years and was employed by the City of Chattanooga Public Works Department. He said he would assist the Defendant in finding employment. He previously spoke to his supervisor, who said he would hire the Defendant upon submission of an application.

On cross-examination, Mr. Mines testified that the Defendant was adopted by Mr. Mines's mother because Mr. Mines was young when the Defendant was born. Mr. Mines, though, had been in the Defendant's life. Although Mr. Mines knew the Defendant had legal troubles, he did not know the details. He knew the Defendant was on probation but did not know for what offense.

The trial court found that the State established by a preponderance of the evidence that the Defendant violated the conditions of his probation. The court found that the Defendant was at the scene of an attempted break-in and that the Defendant was inside a car parked along the victims' property. The court credited Investigator Early's testimony that the Defendant said he was at the scene for the purpose of a break-in. Defense counsel argued that the Defendant remained inside the car and was not the man who approached the residence, but the court found that if those facts were true, the Defendant was criminally responsible for Mr. Nichols's conduct. The court noted that the Defendant's intent to assist Mr. Nichols did not prevent the Defendant from being criminally responsible for Mr. Nichols's attempting to break into the victims' residence.

The trial court noted that the Defendant was thirty-three years old and had an extensive history of committing burglaries. The court noted the Defendant's 2001 burglary conviction, which involved three burglaries on the University of Tennessee at Chattanooga campus. The court also noted aggravated burglary convictions in 2009 and 2013. The court found that the Defendant was not a suitable candidate for probation. The court noted the

Defendant's father's support but found that the Defendant did not qualify for the house arrest program and that his criminal history did not merit the energy, time, and resources required of the monitoring system. The court revoked the Defendant's probation and ordered his sentence into execution. This appeal followed.

The Defendant contends that the trial court abused its discretion by revoking his probation. He argues that insufficient evidence exists to support the probation revocation. The State responds that the trial court properly revoked the Defendant's probation and ordered him to serve his sentence. We agree with the State.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2014). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c), -310 (2014). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 378 S.W.2d 811, 814 (Tenn. 1965)).

The Defendant argues insufficient evidence exists to support the revocation of his probation, but he fails to explain why the evidence is insufficient and to cite to the record and to legal authority supporting his position. *See* T.R.A.P. 27(a)(7)(A) (stating that the appellant's brief must contain an argument providing "the contentions . . . with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record); *see also* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

In any event, the record shows that the police responded to a burglary-in-progress call from the Morgan home. Ms. Morgan reported that someone was attempting to enter her home through the front door. When the police arrived, the Defendant and Mr. Nichols were

found sitting in a parked car along the road adjacent to the Morgan property. The two men were detained pending an investigation. Officer Lancaster learned that the handle to the front glass door was recently broken and that the handle was found in a side yard. Investigator Early's credited testimony shows that the Defendant stated after being read his *Miranda* rights that he and Mr. Nichols were there to "hit a lick," which meant to steal something or to rob someone. The Defendant's admission and the circumstantial evidence provided sufficient proof for the trial court to conclude by a preponderance of the evidence that the Defendant violated the conditions of his probation by attempting to commit an aggravated burglary.

Likewise, we note that although defense counsel argued that the Defendant remained inside the car and was not the man who approached the residence, the trial court properly found that based on the Defendant's statement to Investigator Early, the Defendant was criminally responsible for Mr. Nichols's conduct. Once the court concluded that a probation violation occurred, it had the authority to revoke the Defendant's probation and order his sentence into execution. *See* T.C.A. § 40-35-311(e)(1)(A). We conclude that the trial court did not abuse its discretion and that the Defendant is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE