IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 6, 2018

## STATE OF TENNESSEE v. DAVID MERRELL MANESS

**Appeal from the Circuit Court for Henderson County**
**No. 14139-2  Donald H. Allen, Judge**

_____

### No. W2017-02335-CCA-R3-CD

_____

The Appellant, David Merrell Maness, appeals the Henderson County Circuit Court's order revoking his community corrections sentence and ordering him to serve his sentence in confinement.  Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gregory D. Gookin (on appeal) and Jeremy B. Epperson (at trial), Jackson, Tennessee, for the appellant, David Merrell Maness.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Jody S. Pickens, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

On March 3, 2015, the Appellant pled guilty to aggravated domestic assault, a Class C felony, and violating an order of protection, a Class A misdemeanor.  Pursuant to the plea agreement, he received a fifteen-year sentence as a Range III, persistent offender for aggravated domestic assault and a concurrent sentence of eleven months, twenty-nine days for violating an order of protection.  He was to serve the effective fifteen-year sentence as eleven months, twenty-nine days in jail with the remainder to be served in community corrections.  At the guilty plea hearing, the State advised the court that the charges resulted from the Appellant's attempting to strangle his girlfriend on February 4,

2014. On July 31, 2017, a community corrections violation warrant was filed, alleging that the Appellant violated the terms of community corrections by being arrested for domestic assault on July 10, 2017; by failing to complete the Teen Challenge program, failing to pay a $500 donation to the Women's Rape Assistance Program (WRAP), and failing to pay court costs and fines as ordered by the trial court; and by testing positive for marijuana on July 12, 2017.

At the outset of the revocation hearing, the trial court questioned the Appellant about the allegations in the community corrections violation warrant, and the Appellant acknowledged testing positive for marijuana on July 12; failing to pay his fines and court costs every month; failing to pay a $500 donation to WRAP; and failing to complete the Teen Challenge outpatient program for drug treatment, alcohol treatment, and anger management. However, he disputed that he committed domestic assault on July 10.

Officer Rodney Scott of the Lexington Police Department testified for the State that on July 10, 2017, he responded to an incident at a residence on Franklin Avenue. When he arrived, he approached the front door and heard two people arguing. The argument began to escalate, so Officer Scott knocked on the front door and announced his presence. The argument began to escalate further and no one answered the door, so Officer Scott knocked and announced again. He then heard cries for help followed by silence. Officer Scott kicked the door in and began searching the residence. He saw blood on the floor and found the Appellant and a woman on the floor. The woman was in a fetal position, had a bloody nose, and appeared distraught. Officer Scott arrested the Appellant. On cross-examination, Officer Scott acknowledged that he did not see how the woman's injuries occurred.

The Appellant testified that the woman was his fiancée. He explained that on the night of the alleged offense, they did not have electricity in their home because he "let the power get cut off." He and his fiancée argued about the electricity, and neighbors heard them and called the police. The Appellant then stated as follows:

> I don't know exactly all of the details, but somehow we hit and collided and she started screaming and hollering. I run into the living room and grabbed the flashlight real quick because that was the only light we had. We had a lantern-type flashlight that was set up in the living room. I grabbed it and at the same time I noticed the police was knocking on the door and I ran back and grabbed a towel and tried to tend to her and tell her the cops were at the door. Well, we decided to go into the back bedroom where the cop seen us laying down and we just laid down and we just wanted the cops to

- 2 -

leave. That's all it was. They kicked the door in and come and got us. We were in the back bedroom. We were arguing. We were laying down like the cop said, but there was no physical fighting.

On cross-examination, the Appellant acknowledged that his fiancée had a "busted" nose and that he was not injured. He said that he and his fiancée were "laying together" and had their arms around each other when Officer Scott found them and that they were lying on the floor because they did not have a bed. The trial court asked the Appellant why he did not answer the door when he heard Officer Scott knocking, and the Appellant said he assumed the police would just go away if he did not answer the door. He said that he and his finacée did not call the police and that they did not want the police to get involved.

At the conclusion of the hearing, defense counsel noted that the Appellant had admitted violating the terms of community corrections but requested that the Appellant receive eleven months, twenty-nine days of "shock incarceration" followed by reinstatement of community corrections. The trial court found that the Appellant violated the conditions of community corrections by failing to remain drug free, failing to pay court costs and fines every month, failing to pay $500 to WRAP, failing to complete the Teen Challenge program, and being arrested for domestic assault. The trial court stated that it accredited Officer Scott's testimony and further found that the Appellant "not only was arrested, but committed a new offense while on probation that being domestic assault." The trial court revoked the Appellant's probation and ordered that he serve his fifteen-year sentence in confinement.

## II. Analysis

Generally, community corrections sentences are governed by the Tennessee Community Corrections Act of 1985. See Tenn. Code Ann. § 40-36-101. The Act provides as follows:

> The court shall . . . possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration.

Tenn. Code Ann. § 40-36-106(e)(4). A trial court may revoke a community corrections sentence upon finding by a preponderance of the evidence that an offender violated the conditions of his suspended sentence. See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). The trial court's revocation of a community corrections sentence will be upheld absent an abuse of discretion. Id. An abuse of discretion occurs if the record contains no substantial evidence to support the conclusion of the trial court that a violation of community corrections has occurred. See State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

On appeal, the Appellant contends that the trial court abused its discretion by revoking his community corrections sentence and ordering that he serve his sentence in confinement because he requested a "significant punishment" of serving eleven months, twenty-nine days in jail instead of full incarceration. However, the Appellant admitted at the revocation hearing, and acknowledges on appeal, that he violated the terms of community corrections. Therefore, the trial court did not abuse its discretion by revoking his community corrections sentence and ordering that he serve his sentence in confinement.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE