IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 16, 2014 Session

**STATE OF TENNESSEE v. COURTNEY EUGENE DUKES**

**Appeal from the Criminal Court for Hamilton County**
**No. 282883     Don W. Poole, Judge**

**No. E2014-00154-CCA-R3-CD-FILED-NOVEMBER 7, 2014**

The Defendant, Courtney Eugene Dukes, appeals the Hamilton County Criminal Court's revoking his probation and ordering his effective four-year sentence into execution. The Defendant contends that the trial court abused its discretion by revoking his probation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Jay A. Perry, Chattanooga, Tennessee, for the appellant, Courtney Eugene Dukes.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; William H. Cox III, District Attorney General; and Cameron B. Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 22, 2012, the Defendant pleaded guilty to domestic aggravated assault, reckless endangerment, theft of property, and aggravated assault. At the guilty plea hearing, the State summarized the facts underlying the Defendant's convictions. According to the State, police officers responded to a "disorder" at 1916 Heaton Street on December 27, 2011. The police were informed by the victims, Paige Fortson and Jessica Davis, that the Defendant came to the residence, argued with the victims about custody issues, and took Ms. Fortson's debit card. Ms. Fortson is the mother of the Defendant's child.

The Defendant then left and returned with a "long gun." The Defendant pointed the gun at the victims and then went outside where he shot the gun into the air. The Defendant

also told Ms. Fortson that he would "come back and shoot up her vehicle." Both victims expressed fear for their safety. After the Defendant was arrested, the police found Ms. Fortson's debit card and .22 caliber cartridges in his pocket. The gun was also recovered.

Upon pleading guilty, the Defendant was sentenced by agreement to serve eleven months, twenty-nine days in confinement with the balance of his four-year sentence on intensive probation. The Defendant also agreed to complete a twenty-six-week anger management program and to avoid contact with the victims. The trial judge asked the Defendant whether avoiding contact with the victims would be a problem, and he responded that it would not. The judge remarked that the Defendant should go to court to work out visitation with his child and that he should stay away from the victims.

On July 15, 2013, the trial court issued a capias for the Defendant's arrest based upon a probation violation report filed by Stephanie Anders alleging the following rule violations: new charges; failure to provide proof of employment for November 2012 to July 2013; failure to report in May, June, and July 2013; failure to pay probation and supervision fees; failure to complete anger management; and engaging in assaultive, abusive, threatening, or intimidating behavior. Two days later, the Defendant was arrested.

At the probation revocation hearing, Probation Officer Nicole Anderson testified that the Defendant had initially been assigned to Jonathan Howard and later to Ms. Anders before being transferred to her supervision. Ms. Anderson had never seen the Defendant.

Ms. Anderson testified that Ms. Anders filed the probation violation report on July 11, 2013. Ms. Anderson agreed that the assaultive, abusive, threatening, or intimidating behavior violation arose out of April 2013 charges for vandalism and theft and June 2013 charges for burglary, domestic assault, and vandalism.

Ms. Anderson testified that an addendum to the report was filed on July 12 alleging the Defendant failed to report an arrest and failed to avoid contact with Ms. Fortson. Ms. Anderson agreed the failure-to-avoid-contact violation also arose out of the new charges.

On cross-examination, Ms. Anderson testified that the Defendant had been in custody since July 10, 2013, which was before his probation supervision had been transferred to her. The Defendant was "stepped down" from intensive probation on February 9 because he had completed eight months of intensive probation and been mostly compliant throughout that time period. Ms. Anderson agreed a supervisor would determine whether a defendant should be placed on regular probation.

Ms. Anderson testified that she did not see anything in the Defendant's file to indicate he owned or started a business. The Defendant had not provided proof of a business or a job search since November 2012. Ms. Anderson agreed the Defendant was placed on regular probation even though he did not have a job. Ms. Anderson had never met Ms. Fortson.

The State offered into evidence a recording of 9-1-1 calls allegedly made by Ms. Fortson. Defense counsel objected to its admission on the grounds that it violated the Defendant's constitutional confrontation rights and contained inadmissible hearsay. Counsel argued that the Defendant denied the incidents described in the recording took place and that without Ms. Fortson's presence at the hearing, the statements in the recording could not be determined to be true. Ms. Fortson was not present at the hearing even though she had been served with a subpoena. The trial judge responded that he needed to listen to the recording to determine whether the statements were made for the purpose of a prosecution or a continuing emergency and whether the recording violated the Defendant's rights.

The recording contained three 9-1-1 calls made on June 20, 2013. During the first call, Ms. Fortson identified her address and reported her "baby daddy bust[ed]" a window out of her house. Ms. Fortson did not identify herself during the call, but the record reflects that the parties agreed the call was from her. In response to questions from the operator, Ms. Fortson identified her baby's father as Courtney Dukes, stated he was "busting" the glass as she spoke, and stated she did not know whether he had any weapons. The operator asked Ms. Fortson for the Defendant's race, but before she could answer, the call was disconnected.

The other two calls were placed from the same location. During the second call, Ms. Fortson's neighbor, Erika Hughley, reported "she" needed the police and described the incident. When the operator asked where "she" was, another woman sounding like the person from the first call responded with details about the incident, but the call was again disconnected. During the third call, Ms. Fortson provided additional details to the operator regarding the incident before being told the police were on their way.

The trial court found that the primary purpose of the statements in the recording was to respond to a continuing emergency by way of a call for help. The court also found that the statements qualified as excited utterances. The recording was received as an exhibit.

The trial court then found by a preponderance of the evidence that the Defendant had violated his probation conditions by (1) failing to report in May, June, and July 2013; (2) failing to continue anger management; (3) failing to submit proof of a job search; (4) failing to pay costs and fees; and (5) violating the no-contact order. The court revoked the Defendant's probation and ordered his four-year sentence into execution with credit for time served. This appeal followed.

The Defendant contends that the trial court abused its discretion by revoking his probation. The Defendant argues that the trial court erred by finding that he violated the no-contact order because the recording contained inadmissible hearsay and violated his confrontation rights. The State responds that the trial court properly revoked the Defendant's probation. We agree with the State.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2014). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c), -310 (2014). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 378 S.W.2d 811, 814 (Tenn. 1965)).

Although the Defendant argues that the trial court should not have relied on the recording in determining whether he violated the no-contact order, he does not challenge the court's finding that he (1) failed to report in May, June, and July 2013; (2) failed to continue anger management; (3) failed to submit proof of a job search; and (4) failed to pay costs and fees. Each of these violations provided a basis for revoking the Defendant's probation. As a result, we conclude that the trial court did not abuse its discretion by revoking the Defendant's probation and ordering his sentence into execution and that any error in relying on the recording was harmless. *See* T.R.A.P. 36(b).

We note that the Defendant erroneously argues in his brief that had the trial court not considered the recording, he might have been eligible for community corrections for his "technical" probation violations. Tennessee Code Annotated section 40-36-106 (2014), states community corrections is unavailable for an offender who has committed a violent offense. Because the Defendant was on probation for domestic aggravated assault, reckless endangerment, and aggravated assault, all violent offenses, he was ineligible for community corrections.

-4-

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____

ROBERT H. MONTGOMERY, JR., JUDGE