IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 15, 2015 at Knoxville

**STATE OF TENNESSEE v. JACOB R. MOWERY**

**Appeal from the Circuit Court for Lawrence County**
**No. 13439      Stella Hargrove, Judge**

---

**No. M2015-00250-CCA-R3-CD – Filed January 7, 2016**

---

The defendant, Jacob R. Mowery, appeals the revocation of his probation, asserting that there was insufficient evidence to support the revocation. After review, we affirm the judgment of the trial court revoking the defendant's probation and ordering him to serve his original sentence in confinement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Claudia S. Jack, District Public Defender; and Robert H. Stovall, Jr., Assistant Public Defender, for the appellant, Jacob R. Mowery.

Herbert H. Slatery III, Attorney General and Reporter; Meredith Devault, Senior Counsel;, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Gary M. Howell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On April 13, 2009, the defendant pled guilty to voluntary manslaughter and received a six-year sentence, suspended to probation. Also on April 13, 2009, the defendant pled guilty to conspiracy to tamper with evidence and received a four-year sentence, suspended to probation, to run consecutively to his six-year sentence for a total effective sentence of ten years of probation. In March 2010, the defendant was charged with an aggravated assault committed on September 18, 2009. Due to the defendant's committing an offense while on probation, a probation revocation warrant was issued on May 10, 2010. For that violation of probation, the defendant received a partial revocation

requiring him to serve six months in the county jail and then return to probation supervised by community corrections.

On October 13, 2011, the defendant pled guilty to aggravated assault and received a three-year sentence, suspended to placement in community corrections, to run consecutively to his previously imposed ten-year probationary sentence. Also on October 13, 2011, the defendant entered guilty pleas to two Class D felony drug offenses, for which the trial court imposed concurrent two-year terms, suspended to placement in community corrections. These sentences were to run concurrently to the three-year sentence for aggravated assault. The defendant's total effective sentence was thirteen years. On November 29, 2012, the Community Corrections Program of Davidson County transferred the defendant to the Tennessee Department of Probation under supervised probation.

On or about September 11, 2014, the defendant left Tennessee and traveled to Missouri without permission of the probation officer or the court and did not return to Tennessee until September 19, 2014. A probation warrant for his arrest was issued and executed on October 10, 2014.

At the defendant's probation revocation hearing on January 22, 2015, Kimani Bonner, the defendant's probation officer, testified that, when the defendant reported to his office on September 8, 2014, he told Mr. Bonner that he was homeless. The defendant also related to a forensic social worker at the probation office that he had a substance abuse problem. The forensic social worker contacted an employee of a "transitional substance abuse agency," who found housing for the defendant at a halfway house. The defendant was scheduled to meet with the social worker on the following Monday, but he did not report to or call the social worker. The defendant left Tennessee on September 11 without obtaining permission, and he did not call Mr. Bonner until after he was in Missouri. Mr. Bonner informed the defendant that he had left without permission and gave him a deadline of September 15 to return. The defendant did not return until September 19.

Mr. Bonner recalled that, during his meeting with the defendant on September 8, the defendant told him that he wanted to transfer to Missouri where his family lived, and Mr. Bonner told the defendant that the cost to transfer would be $150. It was Mr. Bonner's understanding that the defendant did not have the money for the transfer. Mr. Bonner stated that his records reflected that the defendant passed all of his drug screenings. However, he had not provided employment verification since June.

Beth Ladner, a probation officer in possession of the defendant's file, relayed the defendant's history of supervision. On April 13, 2009, the defendant was placed on ten

years of probation for voluntary manslaughter and conspiracy to tamper with evidence. A probation violation warrant was filed against him on May 10, 2010, after he was indicted for aggravated assault in March 2010. A combination plea hearing and revocation hearing was held on October 13, 2011. For the aggravated assault, the defendant received a three-year sentence, suspended to probation, to be served consecutively to his ten-year sentence. The defendant received a partial revocation of his probation – he was ordered to serve six months and then return to probation supervised by community corrections. The guilty plea the defendant entered on October 13, 2011, also included pleas to two drug offenses. The defendant went to community corrections for supervision on October 21, 2011, and was transferred back to probation in Davidson County on November 25, 2012.

On cross-examination, Ms. Ladner acknowledged that the defendant reported to her regularly during the course of her supervision of him. She summarized that the defendant's probation had been previously revoked for obtaining new charges and was now being revoked for absconding from the state.

The defendant testified that he had a motorcycle wreck on June 2, 2014, and that was the reason he was unemployed. Although he stated that he was employed at a restaurant during the time he was in the hospital after his wreck, he also stated that he had already quit the restaurant when he had the wreck and had started his own business of "[h]ome renovations." The defendant said that he had two surgeries as a result of the wreck. One surgery was on June 2, 2014, the day of the wreck, and the other on November 21, 2014. During the time frame between the two surgeries, the defendant received approval for funding to enter a drug and alcohol recovery program. However, the woman who ran the program told him that he could not enter it because he was going to have to take narcotics after his surgery. He claimed that was the reason he left the state and did not report to her.

The defendant claimed that he lived and worked at Grace House before and after his first probation violation, and he ran the recovery program there. He left Grace House and started a recovery house in West Nashville with a friend, as a volunteer. After six months, he moved into a condominium with a roommate. However, after his wreck, he could not pay his bills and "was just staying at . . . friend[s'] houses." He said that he was "completely out of options" and "let them know three weeks beforehand, multiple times each week."

The defendant said that, when he returned from his unauthorized trip to Missouri, he lived at Grace House for three weeks until "they knocked . . . on the door and violated [him] for leaving the [s]tate." The defendant maintained that he went to Missouri to be with his father because he "had no other option. The money [he] had left, it was either go

3

to – get a bus ticket and go somewhere safe that [he] wouldn't be on the streets or be homeless in Nashville with a broke[n] leg[.]"

The defendant stated he had been given twenty to thirty drug screens in the last year or two, and he had passed all of them.

According to the probation officer who authored the defendant's history of supervision and probation violation report contained in the technical record, the defendant consistently changed addresses and employment, and his payment of court costs, fines, and fees had been sporadic. The Level of Service Case Management Inventory ("LSCMI"), a test that rated one's risk for returning to criminal activity or substance abuse, rated the defendant in the medium range for reoffending.

Finding that the defendant had violated his probation by leaving the state without permission, on January 22, 2015, the trial court entered an order revoking the defendant's probation and ordering that he serve his sentence in the Tennessee Department of Correction.

## ANALYSIS

On appeal, the defendant argues that the trial court erred in revoking his probation "based upon the sufficiency and weight of the evidence presented at the hearing." He asserts that he "was homeless and desperate and felt he had no option but to leave for his father's home in Missouri. He returned to Tennessee shortly after being told to return by his probation officer."

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311 (2014). The revocation of probation lies within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)).

In revoking the defendant's probation, the trial court found as follows:

[The defendant] is a very intelligent man.

The Court finds that the State has carried its burden of proof as to the ground that he left the [s]tate without permission. He did not return timely as well.

[The defendant] understood the rules of probation. Certainly he was of sufficient intelligence. He had been on probation for over five years by the time he left Tennessee to go to Missouri.

He's had at least one A.C.R.C. I should comment on those . . . especially when a defense lawyer likes to tell me this is a first revocation, because this [c]ourt has been familiar with multiple A.C.R.C.'s before a first warrant. I recognize that [the defendant] has only had one A.C.R.C., where treatment was offered and he, obviously, took advantage of it.

Further, the proof has shown that housing was available for [the defendant]. He complains that that was not possible, because of the injuries that he incurred and the surgeries.

I don't see anything in the record medically that backs up that he couldn't work. During this time, he claims that that has been a real issue for him.

You know, 13 years, 13 years' probation, a free man. I wouldn't mess with that. That's risky business, [the defendant], to leave Tennessee without permission. You knew better.

The defendant admitted that he left the state without permission, which was a violation of his probation. However, he claims that he was "homeless and desperate and felt he had no option but to leave for his father's home in Missouri." Regardless of the reason for his actions, and the trial court judged the credibility of such testimony, the defendant knew the rules of probation and violated them. Admissions alone are an adequate basis for revocation of probation. See Wall, 909 S.W.2d at 10. Therefore, the trial court acted clearly within its discretion in finding, by a preponderance of the evidence, that the defendant violated the terms of his probation.

5

# CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court revoking the defendant's probation and ordering him to serve his original sentence in confinement.

_____
ALAN E. GLENN, JUDGE