IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs March 27, 2019

**STATE OF TENNESSEE v. KRYSTAL GAIL JENKINS**

**Appeal from the Criminal Court for Bradley County**
**No. 11-CR-542B    Andrew M. Freiberg, Judge**

_____

**No. E2018-01335-CCA-R3-CD**

_____

The Defendant, Krystal Gail Jenkins, appeals the trial court's revocation of her probation, arguing that the court abused its discretion in not considering all alternative sentences to incarceration and ordering her to serve the balance of her original sentence in the Department of Correction.  After thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

C. Richard Hughes, Jr., District Public Defender; Steve Morgan, Assistant District Public Defender, for the appellant, Krystal Gail Jenkins.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Paul Moyle, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Bradley County Grand Jury indicted the Defendant and her co-defendant for conspiracy to sell or deliver methamphetamine, a Schedule II controlled substance, and for the sale or delivery of less than 0.5 grams of methamphetamine on November 16, 2011.  The Defendant pled guilty as charged on April 2, 2012, and was sentenced to

concurrent terms of four years at 30% for the conspiracy charge and six years at 30% for the sale or delivery charge for an effective six-year sentence to be served on probation.

On July 27, 2012, the first probation violation report was filed against the Defendant, stating that she had tested positive for methamphetamine, amphetamine, and benzodiazepine and admitted to using them. She had also failed to pay court-ordered court costs and fines. On October 16, 2012, the violation report was amended to reflect that the Defendant was arrested on September 23, 2012, for possession of drugs and drug paraphernalia. On March 4, 2013, the trial court entered an order finding that the Defendant had violated her probation. The trial court subsequently reinstated the Defendant's probation and placed her in the adult drug court program, noting that she had to comply with all of the drug court's conditions.

On April 7, 2014, another violation of probation report was filed, stating that the Defendant had changed her address without informing her probation officer and had again failed to pay court costs and fines. The court held a probation violation hearing on June 9, 2014, and held the probation violation warrant in abeyance while placing the Defendant back in drug court. The probation violation warrant was dismissed on October 27, 2014.

On December 2, 2016, another violation of probation report was filed, stating that the Defendant had not reported to her probation officer since July and had again failed to make payments toward court costs and fines. The report also noted that the Defendant had failed drug tests in June 2015 and June 2016 and was referred to a forensic social worker, whom she never contacted. On November 18, 2016, the Defendant complained of chest pains after being told she would be drug tested, though Bradley County Firefighters found no abnormalities in her vital signs. The report stated that the Defendant had not contacted the probation division since that incident. On August 26, 2017, the Defendant was arrested on the probation violation warrant and on November 6, 2017, the court reinstated the Defendant's probation.

On December 5, 2017, another violation of probation report was filed, stating that the Defendant had tested positive for methamphetamine and admitted to using the drug. The report was amended on February 2, 2018, to reflect that the Defendant was "willfully not reporting to probation and [wa]s declared an absconder." The trial court held a violation of probation hearing on June 22, 2018. The Defendant pled guilty to the violations of probation, namely that she had tested positive for methamphetamine and failed to report to probation. The Defendant affirmed that she understood her rights and was not guaranteed an alternative sentence. The trial court found the Defendant to be in violation of probation based on her guilty plea.

At the revocation hearing, Ms. Beverly Cameron testified that she was a probation officer and court specialist with the Department of Correction Board of Probation and Parole. She covered all court cases, coordinating testimony and probation revocation orders. Ms. Cameron testified that there was a centralized database, E-TOMIS, which contained notes and information regarding people on probation. Ms. Cameron stated that E-TOMIS indicated the Defendant "did not look very well" and was "nervous" before failing her drug test on November 28, 2017. The court took judicial notice of the Defendant's probation records. On cross-examination, Ms. Cameron affirmed that methamphetamine use automatically required the filing of a probation violation report.

The Defendant testified on her own behalf at the probation revocation hearing. Though she asserted that she had only ever been in trouble for consuming methamphetamine, she acknowledged on cross-examination that she had also failed to report to her probation officer, visit the forensic social worker, or consistently pay court costs and fines. The Defendant testified that she had not had any new charges since being placed on probation. She also stated that she had two heart attacks, two strokes, a brain bleed, and open-heart surgery since being placed on probation, though she acknowledged such conditions did not prevent her from using methamphetamine. The Defendant testified that she resided with her incarcerated boyfriend's elderly mother when the Defendant was not incarcerated. She asserted that she was "not a bad person" and did not "deserve[] prison[.]" The trial court recognized that she had successfully completed drug court. The trial court also accredited the Defendant's testimony regarding her medical history but otherwise found "her credibility ha[d] been impeached."

Following the close of all proof, the trial court revoked the Defendant's probation in full and ordered her to serve the balance of her sentence in the Department of Correction. As she was leaving the courtroom, the Defendant asked "Do I not qualify for Community Corrections?" and the trial court responded, "No . . . not anymore."

## ANALYSIS

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by a preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311. The revocation of probation lies within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the

conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)). We review this issue, therefore, for an abuse of discretion.

Upon a finding that a violation has occurred, the trial court may, in its discretion, either: (1) order incarceration; (2) cause execution of the judgment as it was originally entered; or (3) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 644 (Tenn. 1999); see also Tenn. Code Ann. §§ 40-35-310, -311(e), -308(c) (2014). "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999), perm. app. denied (Tenn. June 28, 1999); see also State v. Markquitton Sanders, No. M2010-02212-CCA-R3-CD, 2011 WL 4529655, at *2 (Tenn. Crim. App. Sept. 29, 2011), perm. app. denied (Tenn. Nov. 17, 2011).

As we have stated, the Defendant pled guilty to the probation violations at the start of the probation violation hearing, and the trial court accordingly found that she had violated the terms of her probation. The Defendant argues that, despite her admission of violating the terms of her probation, the trial court abused its discretion in revoking her probation and ordering incarceration. Specifically, the Defendant faults the trial court for "not even consider[ing] a referral to any community-based alternative to incarceration or placing her on community corrections as a condition of probation."

The Defendant seems to challenge the court's offhanded response to the Defendant's question, "Do I not qualify for Community Corrections?" The Defendant thoroughly examines Tennessee Code Annotated section 40-36-106(a)(1) to demonstrate that she is in fact eligible for community corrections. However, even where a defendant meets the eligibility requirements of the statute, the defendant is not automatically entitled to participate. See State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998). The defendant "bears the burden of affirmatively showing a 'special need' which could be better addressed in the community." State v. Grigsby, 957 S.W.2d 541, 547 n. 11 (Tenn. Crim. App. 1997). Moreover, the trial court is in the best position to ascertain a defendant's amenability to a community corrections program given its ability to observe the defendant's demeanor and characteristics first hand. Id. at 547.

Though referenced in the Defendant's brief on appeal, the Defendant fails to actually acknowledge that upon finding that a probation violation has occurred, the trial court had discretion to order her to serve the rest of her sentence incarcerated. See

<u>Hunter</u>, 1 S.W.3d at 644. She further fails to recognize that she is not automatically entitled to receive alternative sentencing or another grant of probation following her violation of probation. <u>See</u> <u>Jeffrey A. Warfield</u>, 1999 WL 61065, at *2. Though the Defendant states that the trial court accredited her testimony that all of her violation of probation reports were because of failed drug tests, the trial court noted that she had also failed to report to her probation officer, forensic social worker, and pay court costs and fines. The court noted that based on her "very poor history on probation[,]" it did not believe there was "any alternative less restrictive than confinement that would be justice in this case[.]"

Despite the Defendant's arguments to the contrary, the trial court has only abused its discretion if the record on appeal contains no substantial evidence that a probation violation has occurred. As we have already stated, the Defendant's own admission of probation violations is sufficient to establish the requisite substantial evidence. As such, the trial court clearly acted within its discretion in revoking the Defendant's probation after finding that she had violated its terms and ordering her to serve the balance of her sentence incarcerated. The Defendant was not entitled to alternative sentencing or another grant of probation. This issue is without merit.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court revoking the Defendant's probation and ordering the balance of her sentence to be served in the Tennessee Department of Correction.

_____
ALAN E. GLENN, JUDGE

- 5 -