IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 23, 2020

**STATE OF TENNESSEE v. MALIQ ASADI MUHAMMAD**

**Appeal from the Circuit Court for Blount County**
No. C-24742     Tammy Harrington, Judge

**No. E2019-01988-CCA-R3-CD**

The Defendant, Maliq Asadi Muhammad, appeals from the Blount County Circuit Court's revocation of probation for his Range I, eight-year sentence for possession with the intent to sell 0.5 gram or more of cocaine, a Class B felony. *See* T.C.A. § 39-17-417 (2018). The Defendant contends that the trial court erred in revoking his probation and ordering him to serve the remainder of his sentence in confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk (on appeal), Knoxville, Tennessee, and Mack Garner (at revocation hearing), District Public Defender, for the appellant, Maliq Asadi Muhammad.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; Mike L. Flynn, District Attorney General; and Ryan Desmond, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Pursuant to a plea agreement, on April 10, 2017, the Defendant pleaded guilty to possession with the intent to sell 0.5 gram or more of cocaine and to unlawful possession of drug paraphernalia. He received concurrent sentences of eight years for possession with the intent to sell cocaine and nine months, twenty-two days for unlawful possession of drug paraphernalia. After serving nine months, twenty-two days in confinement, the remainder of the eight-year sentence was suspended to probation. On May 17, 2017, the Defendant's probation supervision was transferred to Minnesota.

On May 25, 2018, a probation violation report was filed and alleged that the Defendant had been arrested in Minnesota for assault and three counts of making terroristic threats and that the Defendant had failed to pay court costs, fees, fines, and restitution. A probation violation warrant was issued on May 29, 2018. On October 31, 2019, the probation violation warrant was amended to reflect that on January 23, 2019, the Defendant was convicted of "Obstructing Legal Process-Interfere With Peace officer" in Ramsey County, Minnesota. A revocation hearing was held on November 1, 2019.

Certified copies of the Defendant's Minnesota convictions were received as exhibits and reflect that on January 14, 2019, the Defendant was convicted of misdemeanor assault in the fifth degree and received a ninety-day sentence. The Defendant was likewise convicted of obstructing legal process and received a ninety-day sentence. At the revocation hearing, the Defendant stipulated that he had not paid court costs, fees, fines, and restitution.

The Defendant testified that he was age twenty-eight, that he was released from confinement in the present case on April 10, 2017, and that his supervision was transferred to Minnesota about one month later. He said this was his first probation violation. He said that he lived and worked in Minnesota until his arrest in the Minnesota cases. He said that he had worked at a recycling company, that he had reported to his probation officer monthly, and that he did not have any "special conditions" of probation.

The Defendant testified relative to the Minnesota convictions that he was arrested for making terroristic threats, that the charge was reduced to a misdemeanor, that he pleaded guilty, and that his Minnesota probation officer declined to file a probation violation report. The Defendant said that his probation officer advised him of the revocation proceedings in this case and told him to turn himself in to the police. The Defendant said that he followed his probation officers' instructions and that he had been in confinement since returning to Tennessee. He said that if the trial court returned him to probation in Minnesota, he would continue working at the recycling company. The Defendant stated that he did not live in Tennessee and that the conviction in the present case resulted from his attending a "cabin party" with cocaine. He requested that the trial court sentence him to time served for violating his probation and that he had served 120 days in jail.

The Defendant testified that he was never told he was required to pay court costs but that he would schedule a payment plan if the trial court returned him to probation.

On cross-examination, the Defendant testified that he returned to Tennessee at the end of June but that he was arrested after he arrived. He said that after he arrived in Tennessee, the police found him unconscious with a bleeding head and missing teeth and charged him with public intoxication and criminal impersonation. He denied telling police officers that his name was David or Jaylon Johnson and said he was unconscious when the

police found him. The Defendant said that he provided his name to the officers and agreed to be fingerprinted at the jail.

The Defendant testified that the cocaine leading to his conviction in the present case was for personal use. He agreed that he had previous Minnesota convictions for domestic battery and domestic assault and that he received two years' probation. He agreed he had previous Illinois convictions for domestic assault, aggravated criminal trespass, trespassing, violating an order of protection by persistent trespass, and misdemeanor marijuana possession.

The Defendant testified that the new Minnesota convictions resulted from an incident in which a person "jumped on" him and in which he threatened to "beat up" the person. He said that after his arrest, "they switched the charge to spitting on a fire department (sic) because when [he] was bleeding they put a spit mask on [him]." He said that he could not breath due to asthma. He said that he pleaded guilty to "spitting on a fire department" and was released from custody.

The trial court determined that the Defendant "engaged in a material violation" of the terms of his release based upon his Minnesota convictions for assault and obstruction of legal process or interference with a peace officer. The court determined, based upon the parties' agreement, that the Defendant had served nine months, twenty-two days before his initial release to probation and that the Defendant had served four months in jail pending the outcome of the revocation proceedings. The court found that the Defendant had an extensive criminal history, although most of the Defendant's convictions involved misdemeanors, and that he had been employed before the probation violation warrant was issued. The court, though, discredited the Defendant's testimony regarding his turning himself into the authorities and questioned whether the Defendant was an appropriate candidate for probation. The court revoked the Defendant's probation and ordered him to serve the remainder of his sentence in confinement. This appeal followed.

The Defendant contends that the trial court erred in ordering him to serve his sentence in confinement and that the court should have ordered split confinement. The State responds that the court did not abuse its discretion. We agree with the State.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation sentence "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of

probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2014). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order a period of confinement, or order the defendant's sentence into execution as originally entered. *Id*. §§ 40-35-308(a), (c), -310 (2014). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 215 Tenn. 553, 387 S.W.2d 811, 814 (Tenn. 1965)).

The record reflects that the Defendant acknowledged he had been convicted of criminal offenses in Minnesota while serving his sentence on probation. The conditions of his probation prohibited the Defendant from engaging in criminal conduct, and as a result, the record supports the trial court's finding that the Defendant violated the conditions of his probation. The court did not abuse its discretion by revoking the Defendant's probation. *See* T.C.A. § 40-35-311 (e)(1). Once the court revoked the Defendant's probation, it had the authority to order the Defendant to serve his sentence in confinement. *See id*. §§ 40-35-308(a), (c), -310. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE

-4-