IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 9, 2024

## STATE OF TENNESSEE v. LADARIUS QUASHON KEES

**Appeal from the Circuit Court for Robertson County**
**No. 74CC2-2019-CR-194  Robert Bateman, Judge**

_____

### No. M2024-00057-CCA-R3-CD

_____

The Defendant, Ladarius Quashon Kees, appeals the revocation of his community corrections sentence and reinstatement of the remainder of his original five-year sentence in confinement, arguing that the trial court erred by failing to adequately consider the appropriate consequences for his violations and by failing to weigh his request for a rehabilitation program.  Based on our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and ROBERT W. WEDEMEYER, J., joined.

M. Todd Ridley, Assistant Public Defender-Appellate Division, Nashville, Tennessee (on appeal) and Dan Dalrymple, Assistant Public Defender, Springfield, Tennessee (at hearing), for the appellant, Ladarius Quashon Kees.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Rinard, Assistant Attorney General; Robert J. Nash, District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On November 13, 2020, the Defendant pled guilty in the Robertson County Circuit Court to one count of robbery, a Class C felony, for which he received a five-year sentence in the Tennessee Department of Correction, suspended to community corrections.  On February 18, 2022, a violation warrant was filed alleging that the Defendant violated the

terms of his community corrections sentence by failing to remain drug free, failing to abide by curfew, and failing to report as directed. The Defendant admitted that he was in violation, was sentenced to serve ninety days in jail, and was reinstated to community corrections.

On January 11, 2023, another violation warrant was filed alleging that the Defendant violated the terms of his community corrections sentence by testing positive for illegal drugs on four different dates, failing to report as directed on nine different dates, and failing to abide by curfew on four different dates. The Defendant again admitted that he was in violation of his community corrections sentence and, by agreement of the parties, the matter "was reset for disposition with the hope that [the Defendant] could deal with his substance abuse problems." To that end, the Defendant was first admitted to a drug rehabilitation program in Tennessee, Recovery Community, Inc. ("RCI"). When he tested positive for drugs at RCI, he was allowed to enroll in a residential drug treatment facility in California. After testing positive for illegal drugs at that California facility, he returned to Tennessee and was readmitted to RCI.

On August 18, 2023, an absconder violation warrant was filed alleging that the Defendant tested positive for illegal drugs on four separate dates while at RCI and had not reported since being discharged from RCI after testing positive for fentanyl on July 17, 2023.

At the beginning of the December 12, 2023 revocation hearing, the Defendant admitted the violations contained in the August 18, 2023 warrant. Robertson County Community Corrections Officer Brian Hawkins testified that on April 13, 2023, the Defendant admitted the violations alleged in the earlier January 11, 2023 violation warrant, which were based on the Defendant's multiple failed drug screens and sporadic reporting. He said that after the Defendant admitted the violations on April 13, 2023, the Defendant tested positive for cocaine on April 20, 2023. However, instead of immediately seeking another violation warrant, he attempted to assist the Defendant with rehabilitation. He stated that on May 15, 2023, the Defendant was admitted to RCI, a transitional living facility in Madison. After failing drug screens at RCI, the Defendant was allowed to enter an intensive residential treatment facility, "Safe Haven Recovery," in Beverly Hills, California. On June 8, while at Safe Haven Recovery, the Defendant "tested positive for methamphetamine, buccal morphine, norbuprenorphine, cocaine, fentanyl, norpfentanyl, morphine, and naloxone." The Defendant then left that California facility, returned to Tennessee, and returned to RCI, with Officer Hawkins continuing to monitor him. Officer Hawkins testified that on June 17 the Defendant tested positive for cocaine and fentanyl while at RCI. He stated that RCI contacted him to tell him that the Defendant had left their program and gone "to another program but [that they] did not know where." From July 17

through August 18, the date of the absconder warrant, he heard nothing from the Defendant despite the Defendant's being required to report each week if he was not in rehabilitation.

On cross-examination, Officer Hawkins testified that he was unaware that a representative of Safe Haven Recovery had indicated the facility's willingness to accept the Defendant back into their program. He agreed that the Defendant had "a pretty significant drug problem" but had tested negative on drug screens from November 13, 2020, through January 25, 2022, apparently doing well for approximately two years.

The twenty-five-year-old Defendant testified that Safe Haven Recovery, which was accessible to him through his mother's insurance, had agreed to accept him back into their program. He said that, if given the opportunity, he was committed to attempting rehabilitation again.

On cross-examination, the Defendant acknowledged that his sentence in the instant case was ordered to be served consecutively to his sentences for two prior felony convictions for which he had been given "time-served [for the approximate year and a half he had spent in jail] . . . and . . . started [on] the five years Community Corrections[.]" He further acknowledged that he had been given the opportunity of rehabilitation at RCI after his February 2022 violation for drug use and sporadic reporting. When asked what had happened at RCI in May, he responded that he "[j]ust couldn't leave the [drug] lifestyle alone." He denied that he used drugs during his California Safe Haven Recovery rehabilitation, testifying that his positive drug screens there resulted from his intake screening. He stated that he spent thirty days at Safe Haven Recovery, returned to RCI in Tennessee, and tested positive for fentanyl on July 17. He acknowledged that he was kicked out of RCI and that he did not thereafter report to Officer Hawkins. He explained that he had gone from RCI to "Soaring Eagle in Antioch," and said that Soaring Eagle never contacted his probation officer or his lawyer. He conceded, however, that Soaring Eagle was a half-way house, that it allowed cell phones, and that he could have contacted Officer Hawkins himself but chose not to. He testified that he was picked up on September 19 from "another jail" after having been stopped for a traffic offense in Davidson County. He stated that he had not used any narcotics since July. When asked if he would be willing to attend a rehabilitation facility in Tennessee if the trial court denied his request for the Beverly Hills facility, he replied that he would. When asked why he had hesitated before his affirmative response, he testified that it was because "Tennessee rehabs . . . are very dope-infested, drug-infested" but the California facility was a "very secure place."

On redirect examination, the Defendant testified that he had no concerns about his ability to be successful at a rehabilitation facility because he had "been clean for a little while now," which made it easier than going to rehabilitation straight "off the street[.]"

At the conclusion of the hearing, the trial court found by a preponderance of the evidence that the Defendant was not a suitable candidate for alternative sentencing based on his repeated violations of the conditions of his community corrections sentence. Accordingly, the trial court revoked the community corrections sentence and ordered that the Defendant serve the balance of his sentence in confinement with appropriate credit given for the time he had successfully served.

## ANALYSIS

The Defendant contends on appeal that the trial court erred by revoking his community corrections sentence and ordering him to serve the remainder of his time in confinement. Specifically, the Defendant argues that the trial court was unable to determine the appropriate consequences upon its revocation decision because "the State did not present additional proof regarding the appropriate consequence for those violations." The State responds that there was no need for different sources of proof or a separate hearing, and that the trial court properly engaged in the *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022), two-step analysis before fully revoking the Defendant's suspended sentence. We agree with the State.

A trial court is authorized to revoke a suspended sentence upon finding that the defendant violated the conditions of the sentence by a preponderance of the evidence. Tenn. Code Ann. § 40-35-310, -311; *see State v. Harkins*, 811 S.W.2d 79, 82-83 (Tenn. 1991) ("Given the similar nature of a community corrections sentence and a sentence of probation, . . . the same principles are applicable in deciding whether a community corrections sentence revocation was proper."). Following the revocation of a community corrections sentence, the trial court may "resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." Tenn. Code Ann. § 40-36-106(e)(4).

"[P]robation revocation is a two-step consideration on the part of the trial court." *Dagnan*, 641 S.W.3d at 757. "The first [step] is to determine whether to revoke probation, and the second [step] is to determine the appropriate consequence upon revocation." *Id.* Each of these is a separate and distinct decision, but there is no requirement that two separate hearings be held. *Id.* at 757-8. The standard of review for a probation revocation case is "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *Id.*

We disagree that the trial court failed to consider the appropriate consequences, or that it failed to weigh the Defendant's desire for rehabilitation, in ordering the Defendant

to serve the remainder of his sentence in confinement. The trial court reviewed the Defendant's history on community corrections, including his repeated failures at rehabilitation, before finding that the Defendant was not a suitable candidate for an alternative sentence. The trial court's ruling states in pertinent part:

> The Defendant by warrant issued on February 18th of 2022 was charged with failure to abide by the behavior contract, failure to remain drug-free, failure to abide by the curfew and failure to report as directed. By order entered on April 27th of 2022, the Defendant at that time admitted he was in violation and ordered to serve ninety days and was reinstated to Community Corrections.

> Then on January 11th of 2023, a new warrant was taken out alleging four allegations of failing drug screens. One allegation of nine failures to report and also failure to abide by curfew.

> On April 13th of 2023, the Defendant in open Court admitted he was in violation, but the matter was reset for disposition with the hope that [the Defendant] could deal with his substance abuse problems.

> Based upon the testimony here today it is apparent that instead of trying to deal with those issues, he left any sort of rehabilitation facility and just quit reporting. Didn't come back, didn't follow up with Community Corrections. He has admitted today in the amended warrant that was taken out on August 18th of 2023 that he failed to report back to Community Corrections and had absconded and at various times, that he failed a drug screen.

> So the Court finds that by preponderance of the evidence, that the record shows that [the Defendant] is not suitable for alternative sentencing. The Court takes no pleasure in this, but based upon his repeated violations of his obligations with Community Corrections and basically at the last for absconding, just having no contact where there is no supervision, the Court finds that the only choice the Court has is to order Community Corrections sentence revoked and he be ordered to serve the balance of his sentence with the appropriate credits that he has obtained at this point.

The trial court made adequate factual findings, supported by the record, for its decision to fully revoke the Defendant's sentence and to order that he serve the remainder of his time in confinement. Accordingly, we conclude that the trial court acted well within its discretion in its sentencing determinations.

## CONCLUSION

Based on our review, we affirm the judgment of the trial court.

_____
JOHN W. CAMPBELL, SR., JUDGE